The Honorable John L. Weinberg

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

        Plaintiff,

        v.

PRADYUMNA K. SAMAL,

        Defendant.

NO. MJ18-00190

MEMORANDUM IN SUPPORT OF
MOTION FOR DETENTION

17  The United States of America, by and through Annette L. Hayes, United States
18  Attorney for the Western District of Washington, and Siddharth Velamoor, Assistant
19  United States Attorney for said District, files this Memorandum in Support of the United
20  States' Motion for Detention [Docket 4].

21                **I.      INTRODUCTION**

22  Pradyumna K. Samal ("SAMAL") is charged with carrying out a sophisticated
23  visa-fraud scheme, through which he financially exploited over one-hundred foreign
24  workers.  As set out in the Complaint and below, the evidence of his crimes is extensive.
25  SAMAL manipulated thousands of immigration documents, lied (and directed others to
26  lie) to consular and immigration officers, and helped obtain hundreds of illegitimate
27  visas.  SAMAL also spoliated evidence, obstructed Grand Jury proceedings, and moved
28  assets overseas to shield them from potential criminal forfeiture.

MEMO. IN SUPPORT OF GOVT'S MOT. FOR DETENTION
*United States v. Samal*, MJ18-190MAT - 1

On February 15, 2018, shortly after investigators approached two of his co-conspirators, SAMAL abruptly flew to India on a ticket he purchased just hours before his departure. He spent the next *six months* overseas, shedding his ties to the United States, and laying the groundwork to relocate permanently to India, by: (a) selling off his U.S. businesses; (b) establishing offices in India; (c) negotiating commercial contracts; and (d) renovating and furnishing a large residence in India. When he flew back to the United States on August 28, he was arrested on an under-seal warrant.

No condition or combination of conditions can reasonably assure SAMAL's appearance. SAMAL is an Indian citizen whose legal status in the United States is uncertain, regardless of the pending criminal charges. He has a prior misdemeanor conviction in this District, involving acts of obstruction of justice, witness tampering, and false statements to criminal investigators. He now faces much more serious criminal charges, which carry lengthy terms of imprisonment (and the collateral consequence of deportation). Whereas he has numerous creditors and virtually no assets in the United States, he has money, businesses, family, and friends in India. If released, he will have every incentive to obtain a new passport from the Indian embassy, travel across a land border crossing, and find his way back to India with his wife and two children.

## II.    BACKGROUND

SAMAL is the owner and Chief Executive Officer ("CEO") of two largely inoperative Seattle-area companies named Divensi, Inc. ("Divensi") and Azimetry, Inc. ("Azimetry"). He established Divensi and Azimetry in 2010 and 2011 respectively, after a criminal conviction caused him to dissolve a prior business that he owned. Specifically, in 2009, SAMAL pleaded guilty to a misdemeanor charge of Computer Intrusion, for directing his employee to disable a customer's website, resulting in thousands of dollars of damage to the victim.

MEMO. IN SUPPORT OF GOVT'S MOT. FOR DETENTION
*United States v. Samal*, MJ18-190MAT - 2

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

In that case, SAMAL admitted that he lied (and directed his employee to lie) to the Federal Bureau of Investigation ("FBI").[1]  While serving his sentence of probation in that case, SAMAL was admonished by the Probation Office for overstaying a court-approved visit to India.

## A.      The Offense Conduct

In his role as CEO at Divensi and Azimetry, SAMAL exploited hundreds of foreign nationals who aspired to live and work in the United States.  As set out in the Complaint, SAMAL's companies supplied workers to major clients in the information-technology industry.  Almost all of those workers were foreign nationals, who were authorized to live and work temporarily in the United States under so-called "specialty-occupation" or "H-1B" visas.  SAMAL's companies petitioned for those H-1B visas in applications to the United States Citizenship and Immigration Services ("USCIS").  In that context, SAMAL and his co-conspirators committed three types of crimes, which are the subject of this case: (1) fraud against the United States in connection with the visa-application process; (2) fraud against foreign nationals; and (3) obstruction of justice.

### 1.      Fraud Against the United States

SAMAL's companies filed over one hundred visa petitions containing material false statements and forged documents.  More specifically, SAMAL's companies falsely claimed to USCIS that the foreign nationals named in the petitions already had been approved to work on projects at one of two end clients (referred to as "CLIENT A" and "CLIENT B" in the Complaint).  To support those assertions, the petitions attached letters and contracts that purported to have been issued and signed by senior executives at CLIENT A and CLIENT B, but which in fact had been forged.  The fraudulent materials were designed to induce USCIS to believe that the foreign nationals already had been earmarked for projects that required specialized skills.

---

[1] In his sentencing memorandum in that case, SAMAL claimed that he "panicked and dissembled.  In addition, he instructed [his employee] to tell the [FBI] agent either that he knew nothing or not to say anything or words to that effect."  *See* Def.'s Sentencing Memo., *United States v. Samal*, CR09-00005, Docket 27, at 13:18-21.

MEMO. IN SUPPORT OF GOVT'S MOT. FOR DETENTION
*United States v. Samal*, MJ18-190MAT - 3

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

The evidence of SAMAL's guilt is both direct and substantial.  SAMAL signed over *one hundred* petitions claiming that foreign nationals had been assigned to projects for CLIENT A or CLIENT B, but *none* of those foreign nationals ended up working on the specified projects after their entry into the United States.  CLIENT A and CLIENT B informed investigators that they had no knowledge of those foreign nationals, or the purported projects for which they had been earmarked.  Investigators also found emails evidencing that SAMAL himself prepared the forged letters that purported to have been issued by CLIENT A and CLIENT B, and even affixed forged signature to those letters. *See, e.g.*, Exs. A (email from SAMAL attaching client letter); B (same), C (request from co-conspirator for SAMAL to affix signature to client letter); D (same).  SAMAL also sent emails directing his company's marketing team to send foreign nationals' resumes to clients other than CLIENT A and CLIENT B, even while visa petitions were still pending adjudication by USCIS.  *See* SAMAL Marketing Emails, Exs. E, F.

SAMAL gained significant competitive and financial advantages through this fraud.  He acquired employees who he marketed to major clients for short-term project needs, without any of the immigration-related delays that those clients would face if they sought to petition USCIS directly.  He also obtained other advantages, including longer periods of work authorization than USCIS otherwise would have authorized, visas for workers who lacked the requisite qualifications for the H-1B program, and approvals to pay those workers lower wages than they otherwise should have received.  At trial, the United States will describe the many ways in which SAMAL, his companies, and his co-conspirators enriched themselves through this fraudulent scheme, including the millions of dollars in illegal proceeds that they obtained.

2.    Fraud Against Foreign Nationals

SAMAL also victimized foreign nationals.  Foreign nationals who work temporarily in the United States are economically vulnerable:  their ability to live in the United States depends on continued employment by their petitioning employer; they

MEMO. IN SUPPORT OF GOVT'S MOT. FOR DETENTION
*United States v. Samal*, MJ18-190MAT - 4

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    often are willing to accept wages far below prevailing wage levels; and they are highly

2    motivated to enter the United States labor force.

3         At SAMAL's direction, his companies systematically violated U.S. laws and

4    regulations that protect vulnerable foreign nationals from being exploited.  Specifically:

5    •    Labor laws require employers to pay foreign nationals a salary during their

6         employment.  SAMAL's companies, however, had a policy of forcing

7         foreign-national employees to take unpaid sick or annual leave during the

8         periods of time for which they lacked projects at paying clients.  *See* Email,

9         Ex. G ("No Bench Salary"); Leave Requests, Ex. H.

10   •    In violation of laws and regulations regarding the allocation of visa-

11        application fees, SAMAL required foreign nationals to pay a purported

12        "security deposit" to cover the application fees associated with the visa

13        petitions that SAMAL's companies filed on their behalf.  *See* Security

14        Deposit Agreement, Ex. I.[2]  (SAMAL's companies regularly reneged on

15        their binding, written, agreements to return a portion of the deposits to

16        foreign nationals.)

17   •    Labor laws require employers to pay foreign nationals the *prevailing wage*

18        in their field.  SAMAL conspired to force an employee to kick back a

19        portion of the salary to which she was entitled as a matter of law, so that

20        her employment would remain profitable.  *See* Email Chain, Ex. J.

21        The evidence of SAMAL's guilt for these crimes against foreign nationals is also

22   strong.  It consists of his own emails, admissions by his co-conspirators, heart-wrenching

23   accounts from the foreign-national victims, and thousands of contemporaneous

24   documents that investigators found in SAMAL's offices and email accounts.

---

26   [2]  If the United States Citizenship and Immigration Services ("USCIS") failed to approve the petition for a visa,
27   SAMAL's companies refunded only half of the "security deposit" to the foreign national.  *See* Ex. I.  If, on the other
     hand, USCIS approved the petition, then the foreign national would only receive a partial deposit if they stayed at
28   the companies for twenty-four (24) months.  *Id.*  The latter condition placed a financial restraint on foreign nationals,
     and was designed to prevent them from leaving SAMAL's companies for alternative employers.

MEMO. IN SUPPORT OF GOVT'S MOT. FOR DETENTION                          UNITED STATES ATTORNEY
*United States v. Samal*, MJ18-190MAT - 5                              700 Stewart Street, Suite 5220
                                                                       Seattle, Washington 98101
                                                                       (206) 553-7970

3. <u>Obstruction of Justice</u>

The investigation in this case started in or around the summer of 2015, after USCIS officers noticed irregularities in SAMAL's companies' visa petitions.  Over the next two and a half years, SAMAL made clear that he will stop at nothing to avoid being held accountable for his crimes.

For instance, SAMAL has made false statements to clients and investigators about the offense conduct.  When confronted by CLIENT B about the misuse of its identity in just one of the forged letters, SAMAL falsely blamed the conduct on a former Chief Operating Officer (the "COO") and asserted that "with the exception of the client letter, that you are aware of, we are finding no technical issues in our files which we believe are correctable in short order."  *See* Ex. K.  SAMAL also told CLIENT B that "I had complete trust in [the COO] and quite frankly did not spend any time overseeing his management of our immigration."  *Id.*  SAMAL further claimed that the COO abandoned the companies and was unreachable.  *Id.*  SAMAL made similar statements to federal investigators in his immigration attorney's presence, and even asserted (in that attorney's presence) that he **never** saw **any** of the dozens of forged CLIENT A or CLIENT B documents before those documents were sent to USCIS.  In truth, SAMAL had personally signed, reviewed, and even added forged signatures to fraudulent documents in hundreds of visa petitions, including several forged letters that purported to have been issued by CLIENT B.[3]  SAMAL also continued to direct the COO to assist with visa petitions, including at and around the time he sent the email to CLIENT B.

Much as he previously did in the context of his 2009 conviction, SAMAL also attempted to influence his co-conspirators' statements to investigators.  One of the

---

[3] SAMAL also claimed to law-enforcement agents that the COO submitted fraudulent materials to USCIS unbeknownst to SAMAL, and concealed the existence of those materials by removing them from copies of the petition files stored at the companies' offices.  As government investigators have learned, at some point after learning about the Government's investigation, SAMAL directed his companies' employees to remove materials from the company's files.

MEMO. IN SUPPORT OF GOVT'S MOT. FOR DETENTION
*United States v. Samal*, MJ18-190MAT - 6

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  SAMAL's co-conspirators told investigators that SAMAL told him/her to be careful

2  about the information or documents he/she chose to disclose in response to a subpoena.

3      SAMAL has also transferred the proceeds of his crimes to accounts in India,

4  making them unavailable for forfeiture and restitution.  While its analysis is ongoing, the

5  Government has determined that in 2015 alone, after learning that the Government had

6  started its investigation into his businesses, SAMAL transferred over $300,000 from his

7  business accounts in the U.S. to a bank account in India.

8      **B.      SAMAL's Plan to Relocate Permanently to India**

9      On the morning of February 15, 2018, just weeks after learning that two of his co-

10  conspirators had been approached by the Government, SAMAL purchased a ticket to

11  New Delhi, India, and flew out of the United States about one hour later.  He left his wife

12  and two high-school-aged children behind.

13      Before leaving the United States for India, SAMAL sold off his U.S. business

14  operations that were under investigation for visa fraud.  Specifically, on February 9,

15  2018, ***six days before fleeing to India***, SAMAL sold to a Georgia company named

16  Synapse Technologies LLC ("Synapse") the ***entirety*** of Divensi's and Azimetry's

17  businesses that related to the provision of foreign national employees to major clients for

18  those clients' short-term project needs.[4]  The Government learned about the sales when

19  Synapse filed visa petitions claiming to be the successor in interest to Divensi and

20  Azimetry.  The sales implicated assets that potentially were subject to criminal forfeiture

21  and virtually eliminated SAMAL's continuing business ties to the United States.

22

23

24

25
———————————————
26  [4] For instance, the Bill of Sale relating to the sale of Azimetry's visa-related business to Synapse specified that
     Synapse had acquired "[a]ll of [Azimetry's] right, title and interest" in: (1) "all customer contracts"; (2) "all
27  contracts, agreements and/or understandings with individuals … used by [Azimetry] in the Business for the
     performance of Customer Contracts"; and (3) books and records relating to Azimetry's business operations.  *See* Bill
28  of Sale and Attachments, Ex. L.

MEMO. IN SUPPORT OF GOVT'S MOT. FOR DETENTION
*United States v. Samal*, MJ18-190MAT - 7

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

While the Government's investigation into SAMAL's activities in India still is ongoing, communications and documents on his phone[5] make clear that he spent the last six months preparing to relocate permanently to India with his wife and children.

*First*, SAMAL expanded the operations of his Indian business, named Divensi Solutions Pvt. Ltd.  In a series of communications to one of his Indian employees, SAMAL shared photographs of his existing office space in India, new office space under development, and his Indian employees (whose faces have been redacted to protect their privacy):

 
 

---

[5] On August 31, 2018, law-enforcement agents searched SAMAL's phones pursuant to warrants issued by the Honorable James P. Donohue, United States Magistrate Judge for the Western District of Washington.

MEMO. IN SUPPORT OF GOVT'S MOT. FOR DETENTION
*United States v. Samal*, MJ18-190MAT - 8

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1      Exchanges between SAMAL and his Indian employees also make clear that he

2 plays an important role in the continued operation of his Indian business – a role that he

3 simply cannot (and never intended to) perform from the United States.[6]

4      ***Second***, SAMAL appears to have entered into multiple contracts to renovate a

5 five-bedroom residence in the state of Odisha, India, within miles of his parents and

6 sibling and his businesses.  SAMAL corresponded with real-estate brokers, builders, and

7 contractors, regarding floorplans, renovations, interior decorations, fixtures, and

8 payments.  *See* Exhibit M (enclosing excerpts of voluminous documents and

9 correspondence relating to renovation of residence).  It appears clear that SAMAL now

10 owns at least one family residence, which he renovated and furnished just weeks before

11 flying to the United States, and that the residence is both large enough to house his entire

12 family and within miles of SAMAL's Indian businesses.

13      Soon after SAMAL left the United States, counsel for the Government consulted

14 with the Department of Justice's Office of International Affairs ("OIA") regarding

15 SAMAL's flight from prosecution.  OIA informed counsel for the Government that

16 extradition from India to the United States is highly unlikely at best, in light of numerous

17 factors, including SAMAL's Indian citizenship.  On that basis, the Government filed an

18 under-seal Complaint against SAMAL in April 2018, with the hopes that SAMAL would

19 briefly re-enter the United States to wrap up remaining business and family commitments

20 before relocating permanently to India.

21

22

23

24 [6] For instance, in one exchange between SAMAL and his employee (excerpts of which are attached as Exhibit N), the employee sent SAMAL the following message: "***Sir we need you tomorrow.  If you have some time it's***

25 ***awesome cuz [sic] we have work that needs tending to and it's not easy.  Thanks we really need your guidance.***" (emphasis added).  SAMAL also sent his brother a message with a news article about Indian nationals who relocated

26 their business operations from the United States to India.  In addition to expanding his existing business in India, SAMAL also entered into a Term Sheet with a multinational fast-food chain to open five fast-food restaurants in and

27 around one of India's fast-growing cities, Bhubaneswar.  Under the Term Sheet, SAMAL invested approximately $100,000, but breached a portion of the Term Sheet that required him to make additional investments.  While the

28 Government is not aware of the status of SAMAL's negotiations, the fact that he even negotiated such an agreement evidences his intention to relocate to India.

MEMO. IN SUPPORT OF GOVT'S MOT. FOR DETENTION
*United States v. Samal*, MJ18-190MAT - 9

### C.    SAMAL's Virtually Non-Existent Ties to the United States

As explained above, SAMAL's substantial ties to India are indisputable:  in sum, after selling his U.S. businesses, he made plans to expand his business ties to India, he renovated and furnished a five-bedroom home in India, and he is an Indian citizen with extensive family and friends in India.  But it bears equal emphasis that SAMAL's ties to the United States are now almost non-existent, to such an extent that he would have every incentive to relocate to India *even if he did not face criminal charges*.

SAMAL's most notable remaining ties to the United States appear to be his wife, his two high-school-aged children, his residence in Bellevue, and the nub of a business that survived the sales to Synapse earlier this year.  None of these purported ties is even remotely strong enough to counterbalance his ties to India,[7] especially in light of this criminal prosecution:

- SAMAL's Bellevue residence appears to have been encumbered by two civil judgments and a home-equity line of credit.[8]
- The most recent account statements for SAMAL's personal bank accounts from 2017 show that the accounts occasionally held negative balances, and rarely held positive balances for any sustained period of time.  SAMAL also received several wire transfers that, in the aggregate, were approximately $300,000 from an individual who has told investigators that he loaned that money to SAMAL with interest because of SAMAL's purported financial difficulties.  The creditor, a U.S. resident, has told investigators that he has tried (and will continue to try) to collect on those purported debts, and that he communicated with SAMAL about repayment.

---

[7] SAMAL is the subject of an immigration detainer issued by U.S. Customs and Border Protection ("CBP") because he may have abandoned his lawful-permanent-residence status by remaining out of the country for more than six months.  *See* Detainer, Ex. O.  Thus, depending on the adjudication of that potential abandonment, SAMAL may not even have legal status in this country, creating yet more incentive to flee to India.  The fact that SAMAL did not attempt to preserve his legal status while overseas also evidences his lack of intention to stay in the U.S.
[8] *See* Ex. P to Velamoor Decl. ($159,919.33 judgment plus 12% annual interest); Ex. Q to Velamoor Decl. ($165,045.51 judgment).

MEMO. IN SUPPORT OF GOVT'S MOT. FOR DETENTION
*United States v. Samal*, MJ18-190MAT - 10

- On or about February 29, 2018, law-enforcement agents traveled to Azimetry's and Divensi's offices in Redmond, and found that those offices had been shuttered.  SAMAL's phone contained messages from former employees about unpaid wages owed to them.  *See, e.g.*, Ex. R.  Border-crossing records in the Government's possession suggest that the U.S.-based individual responsible for running whatever remains of SAMAL's business operations is a resident of Ohio and has traveled to India over the last several months, which further evidences SAMAL's intent to move his business headquarters overseas.

### III.   LEGAL STANDARD

Under the Bail Reform Act, a defendant is potentially eligible for detention in cases, like this one, involving a serious risk of flight.  *See* 18 U.S.C. § 3142(f)(2)(A).  If, following a detention hearing, the Court finds that no condition or combination of conditions will reasonably assure the appearance of the defendant as required (the "risk of flight" prong), and the safety of any other person and the community (the "community safety" prong), the defendant shall be detained.  *See id.*, § 3142(e)(1).  Here, the Government relies upon the risk of flight prong, and therefore is required to prove the need for detention by a preponderance of the evidence.  *See United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985).

The Court must evaluate several enumerated statutory factors to determine whether the Defendant is a risk of flight.  18 U.S.C. § 3142(g).  These factors include:

(1)    the nature and circumstances of the offense;

(2)    the weight of the evidence against the person;

(3)    the history and characteristics of the person, including—

(A)    the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B)    whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing,

MEMO. IN SUPPORT OF GOVT'S MOT. FOR DETENTION
*United States v. Samal*, MJ18-190MAT - 11

1  appeal, or completion of sentence for an offense under Federal, State, or
2  local law.

3  *Id.*[9]

## IV.  DISCUSSION

4
5  As set forth below, the above-listed factors all weigh in favor of detention in this
6  case.

### A.  The Nature and Circumstances of the Offense

7
8  SAMAL has committed serious crimes, including the visa-fraud offense charged
9  in the Complaint.  That offense carries a Sentencing Guidelines range of 63 to 78 months'
10  imprisonment (with acceptance of responsibility), and a statutory maximum term of
11  imprisonment of 10 years.  On the basis of the facts set out in the Complaint, SAMAL
12  also could be charged with Aggravated Identity Theft, under 18 U.S.C. § 1028A, for the
13  forged materials he inserted in visa petitions – a charge that carries a two-year mandatory
14  minimum term of imprisonment that runs consecutively to the terms of imprisonment
15  imposed on other counts of conviction.  These lengthy terms of imprisonment, as well as
16  the substantial potential fines, give SAMAL a strong incentive to flee.  *See United States
17  v. Townsend*, 897 F.2d 989, 995 (9th Cir. 1990).

18  The nature of the crimes also evidence SAMAL's sophistication – *i.e.*, his ability
19  to flee from prosecution.  Specifically, SAMAL manipulated the immigration system:  he
20  used forged signatures and letterhead, and made false statements to immigration officers
21  and investigators.  Indeed, it is difficult to imagine a species of offense conduct that could
22  have prepared SAMAL better for eventual flight from prosecution than the immigration-
23  related crimes he committed in this case.  In addition to manipulating the immigration
24  system, SAMAL has done business in multiple countries, owned bank accounts in at least
25  two different countries, and managed offices and employees in different countries.  *See*

26
27  [9] The statute contains a fourth factor – the nature and seriousness of the danger to any person or the community that
28  would be posed by the person's release.  This factor is the primary focus where the government relies upon the
community safety prong, which the government does not rely upon here.  18 U.S.C. § 3142(g).

MEMO. IN SUPPORT OF GOVT'S MOT. FOR DETENTION
*United States v. Samal*, MJ18-190MAT - 12

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  *id.* at 994 (affirming detention order upon finding that "the accusations are of

2  sophisticated, criminal conduct, whose successful completion required the ability to

3  travel internationally, to adapt easily to foreign countries, and to move assets and

4  individuals quickly from one country to another."). As evidenced by purchase of a ticket

5  just hours before leaving the United States for six months, he has the wherewithal and

6  sophistication to arrange an international trip at a moments' notice.

7       **B.    The Weight of the Evidence**

8       The weight of the evidence against a defendant is one of the statutory factors the

9  Court must consider in the detention calculus. *Motamedi*, 767 F.2d at 1403 (noting than

10 this is the least important of the four statutory factors). This factor is relevant to a risk of

11 flight analysis because a defendant's desire to flee increases with the strength of the

12 evidence against him and the likelihood of conviction at trial.

13      As explained above, the evidence of SAMAL's guilt for the crime charged in the

14 Complaint (and other crimes) is extremely strong. SAMAL ***personally signed*** over ***one***

15 ***hundred*** visa petitions that contained false statements and forged documents about the

16 nature of the work that the foreign nationals named in those petitions would perform. As

17 set out above (and in Exhibits A through F), SAMAL reviewed and edited drafts of those

18 petitions, including the fraudulent materials that his companies included in the petitions.

19 SAMAL also directed his employees to "market" foreign nationals to clients, even

20 though the petitions filed with USCIS claimed that those foreign nationals already had

21 been assigned to projects. Such emails evidence his knowledge that CLIENT A and

22 CLIENT B never had authorized those employees to work on their projects. SAMAL

23 also participated in hundreds of email conversations discussing foreign-national

24 employees who had been "benched" without pay, because his companies had forced

25 those employees to take unpaid leave. Law-enforcement agents found evidence of these

26 crimes in SAMAL's email accounts, his personal devices, in his offices, and in

27 documents produced by his contractual counterparties.

28

MEMO. IN SUPPORT OF GOVT'S MOT. FOR DETENTION
*United States v. Samal*, MJ18-190MAT - 13

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

SAMAL's acts of obstruction further evidence his consciousness of guilt (and his potential exposure to additional criminal liability for obstruction of justice).  As explained above, SAMAL made demonstrably false statements to investigators on May 31, 2017.  He blamed others at his company for his own crimes, and asserted (falsely) that he lacked advance knowledge of the materials in his companies' visa petitions.

**C.      History and Characteristics of the Defendant**

SAMAL has overwhelming ties to India:

- He is an Indian national and Indian citizen, whose continued legal status in this country is uncertain.
- His parents, his brother, and his close friends live in India.
- He operates at least one active business in India with employees who report to him.  The business requires hands-on, in-person, management by SAMAL.
- He at least attempted to negotiate a major, capital-intensive, commercial contract to open a chain of restaurants in one of India's fastest-growing cities. This is not the type of enterprise that someone who intends to reside permanently (or even temporarily) in the United States attempts to establish.
- Communications found on his phone strongly suggest that he owns a five-bedroom home near the businesses referred to above, and renovated and decorated that home, all before flying back to the United States in August.
- He has business and personal bank accounts in India, and has overseen the transfer of hundreds of thousands of dollars out of American accounts and into those accounts.

These facts, alone, establish that no condition or combination of conditions can reasonably assure SAMAL's appearance as required.  *See United States v. Mukhtar*, 2013 WL 2147407 (D. Nev. 2013) (ordering pre-trial detention based on risk of flight based on evidence that defendant previously sent funds overseas, had family in a foreign country, and lacked comparable assets in the United States).

MEMO. IN SUPPORT OF GOVT'S MOT. FOR DETENTION
*United States v. Samal*, MJ18-190MAT - 14

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    Indeed, even if he did not face this pending criminal prosecution, SAMAL would

2    have a strong incentive to relocate to India, given his assets, family, personal property,

3    and business ties to that country. His most recent six-month journey to India weighs in

4    favor of detention. *See United States v. Chojecki*, 2013 WL 275964, at *1 (N.D. Cal.

5    2013) (considering "prior departure from the United States after expressing suspicions

6    about being investigated"). Considered in conjunction with his repeated efforts to evade

7    justice in the context of his prior conviction and in this investigation, the fact that

8    SAMAL has strong, enduring, ties to an overseas country overwhelmingly favor

9    detention. *See United States v. Nicherie*, 2004 WL 7331735, at *3 (C.D. Cal. 2004)

10   (explaining that defendant's "disrespect for the judicial process" and his "pattern of

11   wiliness and manipulation" are "a heavy factor in the Court's determination that the

12   Defendant poses a serious risk of flight").

13   SAMAL's comparatively weak ties to the United States also favor detention. As

14   explained above, SAMAL is being chased by creditors, unpaid former employees, and

15   now must face the many victims of his crimes. *See United States v. Menaged*, 2017 WL

16   2556828, at *3 (D. Ariz. June 13, 2017) (finding defendant's debts and business-financial

17   setbacks supported pretrial detention). SAMAL has also sold most of his U.S. business

18   operations and closed his companies' physical offices in Redmond. The most senior

19   U.S.-based member in his companies traveled to India for business meetings with

20   SAMAL, suggesting that SAMAL has (and can continue to) run whatever remains of his

21   American businesses from India going forward.

22   While SAMAL's wife and two children still live in Bellevue, it bears emphasis

23   that *they lived apart from SAMAL for almost all of this year*. Even if SAMAL feels tied

24   to them, he can relocate them to his five-bedroom residence in India. Alternatively, once

25   his two sons complete high school, SAMAL's wife will be free to rejoin her husband in

26   India. It is simply not unusual for a parent to live apart from their children and spouse for

27   one or two years in any context, let alone where the alternative is a lengthy term of

28   imprisonment. *See United States v. Nicherie*, 2004 WL 7331735, at *7.

MEMO. IN SUPPORT OF GOVT'S MOT. FOR DETENTION
*United States v. Samal*, MJ18-190MAT - 15

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**D.     No Condition or Combination of Conditions Can Reasonably Assure SAMAL's Appearance**

Given SAMAL's strong incentives to flee, his proclivity to evade justice, and his skill at manipulating immigration documents, detention is the only way to reasonably assure his appearance at trial.  Nothing about this case supports the contrary view, that home confinement, curfews, location-monitoring devices, or even the posting of a bond can stop SAMAL from obtaining a new passport from the Indian embassy, traveling to Canada, and flying back to India.

The Pretrial Services Officer informed the Government that SAMAL's counsel proposed the use of a location-monitoring device as an alternative to detention.  But the Ninth Circuit has explained that location-monitoring devices do not stop flight from prosecution.  *Townsend*, 897 F.2d 989, 994-95 ("Nor does the wearing of an electronic device offer assurance against flight occurring before measures can be taken to prevent a detected departure from the jurisdiction."); *see also Menaged*, 2017 WL 2556828, at *4 (D. Ariz. June 13, 2017) ("If Defendant intended to flee, the GPS device could easily be removed.  The device would not prevent Defendant from traveling to another country.  A GPS device would not prevent him from fleeing, and thus does not ameliorate his risk of flight."); *United States v. Patel*, 2017 WL 1098822, at *2 (E.D. Wash. Mar. 23, 2017) ("The Court further finds electronic home monitoring and GPS monitoring to be ineffective tools regarding the concern of flight, particularly foreign flight.  When a monitoring device is removed or cut (which is what occurs when individuals flee), the Probation Officer receives an alert.  However, there is no ability for the Probation Office to locate an individual and prevent them from departing the District or the country.  These devices are more effective in addressing concerns related to safety of the community or other non-compliance.").[10]

---

[10] Nor does SAMAL surrendering his Indian passport alleviate his risk of flight.  He can easily apply to the Indian consulate for a new passport, use an expired passport, create false travel documents, or use another form of identification to travel to Canada or Mexico, from where he can purchase a flight to India.

MEMO. IN SUPPORT OF GOVT'S MOT. FOR DETENTION
*United States v. Samal*, MJ18-190MAT - 16

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  SAMAL's counsel also informed the Government that SAMAL genuinely intends

2  to fight the charges in this case.  If such reassurances were sufficient to avoid detention,

3  then no defendant ever would be detained.  In any case, even if SAMAL presently is

4  inclined to face trial, he may not have the same view after he reviews the discovery, or on

5  the eve of trial, or even after trial.  SAMAL's bare assertion that he intends to stand trial

6  in this case simply does not hold water when considered in light of all of the steps that he

7  has taken over the last few years in response to the Government's investigation.

8  ## V.   CONCLUSION

9  For the foregoing reasons, the United States respectfully submits that SAMAL

10  should be detained pending trial in this matter.

11  DATED this 3rd day of September, 2018.

12
13  Respectfully submitted,

14  ANNETTE L. HAYES
   United States Attorney
15

16
17  *s/Siddharth Velamoor*
   SIDDHARTH VELAMOOR
18  Assistant United States Attorney
   700 Stewart Street, Suite 5220
19  Seattle, WA 98101-1271
   Telephone:   (206) 553-7970
20  Fax:           (206) 553-0755
21  E-mail: siddharth.velamoor@usdoj.gov

22
23
24
25
26
27
28

MEMO. IN SUPPORT OF GOVT'S MOT. FOR DETENTION
*United States v. Samal*, MJ18-190MAT - 17

1

## <u>CERTIFICATE OF SERVICE</u>

2

 I hereby certify that on September 3, 2018, I electronically filed the foregoing with

3

the Clerk of the Court using the CM/ECF system, which will send notification of such

4

filing to all registered parties.

5

6

        */s/ Siddharth Velamoor*

7

        SIDDHARTH VELAMOOR

8

        Assistant United States Attorney
        United States Attorney's Office

9

        700 Stewart Street, Suite 5220
        Seattle, Washington 98101-1271

10

        Phone:  (206) 553-7970

11

        Fax:  (206) 553-0755

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMO. IN SUPPORT OF GOVT'S MOT. FOR DETENTION
*United States v. Samal*, MJ18-190MAT - 18