EXHIBIT C



November 3, 2016

PK Samal
Azimetry, Inc.
14320 NE 21st St., Ste. 14
Bellevue, WA  98007

Re:     MLF Case Number:  16-2844MM
        Review and Legal Analysis of Public Access Files for Azimetry to Determine Company's
        Compliance with the Department of Labor's LCA  Requirements

Dear PK Samal

The Murthy Law Firm has been retained as counsel to Azimetry, Inc (Azimetry) in connection
with the above captioned matter. This letter is being furnished to satisfy the "Legal Analysis of
Documents" section of our Legal Representation Agreement (LRA).

In our capacity as counsel to Azimetry, and for the purposes of this opinion letter, we have
examined the documents that were provided to us by Azimetry from each H-1B employee's
Public Access File (PAF) and a list of Azimetry employees, their employment periods and work
locations.

As you are probably aware, all information/documents submitted to USCIS and DOL must be
accurate and consistent with each other.  These forms are all signed under penalty of perjury.  A
thorough review of Azimetry's Public Access Files (PAF) reveals serious and systemic
compliance violations including the following:

1.     Actual Wage statement is missing
2.     Worksheet justifying Wage level is missing
3.     Posting at Client worksite is missing
4.     Benefits Summary provides no explanation of the offered benefits
5.     Cannot determine if and when the LCA was provided to the employee

While there is no guarantee that correcting these violations will fully protect Azimetry from their
past violations, taking no action to attempt to remedy the violations or continuing to violate the
law and regulations could result in severe penalties against the company and result in serious
consequences, both civil and criminal against the company and its owner(s).

It is our opinion that if Azimetry complies with the recommended remedial actions of its current
known violations outlined in this letter and as further explained on the attached chart, based on
our preliminary review of the documents provided to us, Azimetry should be on track to limit its
potential exposure under existing laws and regulations. We look forward to continuing to guide
Azimetry in future cases.

The remedial actions suggested in this letter are solely for the use of Azimetry and they should
therefore not be relied on by any other Azimetry or any other person. It should also be noted
that the suggested remedial actions are based on the documentation / information that was
provided to Murthy Law Firm. As some of the requested information / documents provided to our

10451 Mill Run Circle, Suite 100
Owings Mills, MD  21117 USA
PH: 410.356.5440
FX: 410.356.5669
law@murthy.com
www.murthy.com

office by Azimetry are incomplete and / or insufficient, our suggested remedial actions could change if provided with further documents or evidence.

Our opinions are based on current immigrations laws, regulations, and policies, which may change in the future. We assume no obligation to supplement this opinion if the applicable laws, regulations, or policies change after this document has been submitted to Azimetry or if we learn of any facts that could change the recommendations or opinions expressed herein.

## I. IDENTIFICATION OF SYSTEMIC VIOLATIONS & RECOMMENDED REMEDIAL ACTION

While reviewing the systemic violations identified and recommended remedial actions below, please refer to the enclosed general **List of Compliance Problems** (**Appendix I**) and **Violations Chart** (**Appendix II**) for the specific problems identified for each individual's Public Access file for Azimetry.  The numbers on the **List of Compliance Problems** (Appendix I) correspond to the numbered columns on the **Violations Chart** (**Appendix II**).   The two documents must be reviewed together.   Please use the **List of Compliance Problems** (**Appendix I**) as a legend for the **Violations Chart** (**Appendix II**).

The below summarizes the systemic violations reflected on the **Violations Chart** and is based on documents and information provided by Azimetry. This letter is intended to identify systemic violations only.  Please refer to the attached chart in **Appendix II** for violations that were identified for specific individuals.

Attached at **Appendix III,** is a checklist of the required documents for an H-1B Public Access Filed (PAF), and a memorandum on the Labor Condition Application Requirement for all H1B Petitions and Public Inspection File.

Attached at **Appendix IV** are Sample Documents referred to in the Posting Notice section below.

### Retention of Public Access File Records

Azimetry must maintain its records at either its principal place of business or at the H-1B worker's place[1] of employment. Azimetry must designate the record-retention location on the LCA. We generally recommend such records as the PAF be maintained at the principal place of business particularly if Azimetry will place the H-1B worker at a client site. Azimetry may be incapable of maintaining such records at the place of employment.

These records must be maintained for one year after the H-1B worker's employment ends or the LCA expires or is withdrawn.

### 1. LCA COMPLIANCE

### Include Complete Copy of Signed, Certified Form ETA 9035 Covering Each Work Location In Each Employees Public Access File (PAF)

---

[1] Place of employment is generally defined as the worksite or physical location where the work is actually performed. Based on particular circumstances, some locations may not be considered a 'place of employment.'

**Violation #14: 5 of the PAF files reviewed do not contain the ETA 9035CP cover pages and LCA instructions.** Azimetry must place these pages in each PAF file now and continue to do so in the future as the company certifies additional LCAs.

**Include Comprehensive/Detailed Evidence that Azimetry Provided Copy of Certified LCA to Employees in PAFs no Later than their First Day of Work**

**Violation #48: 3 of the PAF files are missing evidence that the employee was provided a timely copy of the LCA.** Current regulations require Azimetry to "provide" a copy of the certified LCA to all H-1B workers no later than the date they commence work.[2] If a copy of the certified LCA has previously been provided to each employee, please prepare a memo detailing how and when that copy was provided to that employee and have the employee sign that memo, if possible. If a copy of the certified LCA has not yet been provided to the employee, we recommend that Azimetry immediately do so for all current employees by emailing a copy to the employee and placing a copy of the email in the PAF.

In the future we recommend that Azimetry either include a Memo in each PAF specifying the date Azimetry sent, by certified mail, a copy of the LCA to each employee and the date LCA was received, with a copy of the certified mail return receipt as delivery confirmation. In the alternative, Azimetry can email a copy of the LCA to the employee and place a copy of the email in the PAF. Another option would be for Azimetry to maintain a copy of the LCA signed and dated by each employee acknowledging receipt. It is important to ensure that the employee physically receives a copy of the LCA no later than the day before s/he is expected to report to work.

**Violation #49: 2 of the PAF files reviewed contained evidence that the LCA was provided to the Employee but do not verify the date that it was provided.** Current regulations require Azimetry to "provide" a copy of the certified LCA to all H-1B workers no later than the date they commence work.[3] If a copy of the certified LCA has previously been provided to each employee, please prepare a memo detailing how and when that copy was provided to that employee and have the employee sign that memo, if possible. If a copy of the certified LCA has not yet been provided to the employee, we recommend that Azimetry immediately do so for all current employees by emailing a copy to the employee and placing a copy of the email in the PAF.

Please place a memo in the file confirming the date that the LCA was given to the Employee. In the future we recommend that Azimetry either include a Memo in each PAF specifying the date Azimetry sent, by certified mail, a copy of the LCA to each employee and the date LCA was received, with a copy of the certified mail return receipt as delivery confirmation. In the alternative, Azimetry can email a copy of the LCA to the employee and place a copy of the email in the PAF. Another option would be for Azimetry to maintain a copy of the LCA signed and dated by each employee acknowledging receipt. It is important to ensure that the employee

---

[2] The regulations do not specifically define "provide". On the one hand, the act of mailing the notice could be sufficient. However, on the other hand, "provide" could mean ensuring the physical receipt of the LCA by the employee. To be safe, we recommend using the latter interpretation

[3] The regulations do not specifically define "provide". On the one hand, the act of mailing the notice could be sufficient. However, on the other hand, "provide" could mean ensuring the physical receipt of the LCA by the employee. To be safe, we recommend using the latter interpretation

physically receives a copy of the LCA no later than the day before s/he is expected to report to work.

### Include List of Exempt H-1B Employees where LCA is/will be used to support Only Exempt Employees

**Violation #41: 5 of the PAF files reviewed listed the employees as exempt, however the PAFs did not contain a list of Azimetry's exempt employees.** Where LCAs were used for exempt H-1B employees, Azimetry must include the list of such employees in their PAFs, assuming they were in fact being used to support only exempt employees. Azimetry should prepare a list of current exempt employees with valid H-1Bs and place that list in the PAFs of all current employees with violation #41.

### 2. PLACE ACTUAL WAGE STATEMENTS IN PAFs

**Violation #15: 5 of the PAF files reviewed do not contain an actual wage statement.** Azimetry should prepare such actual wage statements with the current wage information and promptly place them in the employee's respective files. It is important to note that all wage rate information is current at all times. Therefore, if there are any adjustments in employees' wages, these statements <u>must be updated in a timely manner.</u>

### 3. PLACE ACTUAL WAGE MEMORANDUM IN PAFs

**Violation # 19: 1 of the PAF files reviewed do not contain an Actual Wage Memorandum.**[4] DOL regulations require an H-1B employer to include a full and clear explanation of the system used to determine the wage to be paid to its employees in each occupational classification. Employer should immediately place such a wage memorandum or a copy of its pay scale in all public access files. As part of the memo, the employer must also address any pay increases under the employer's compensation system. As part of the memo, it is also a good idea to discuss the weight given to each factor used to determine an employee's salary.

### 4. PLACE APPLICABLE PREVAILING WAGE SURVEYS IN PAFs

**Violation #22:  1 of the PAF files reviewed are missing copies of the wage surveys that were used to establish the prevailing wage reported on the LCAs.**   Please include copies of the prevailing wage surveys relied on for each LCA in the PAF.

**Violation #23: 1 of the PAF files reviewed contain an incorrect Wage Survey.**  Please include copies of the correct prevailing wage surveys relied on for each LCA in the PAF. If the LCA relied on an incorrect prevailing wage survey, please recertify the LCA using the correct

---

[4] Documentation proving the validity of the wage statement including payroll records shall be maintained, generally, for three years from their date of creation.  The specific details of what DOL requires in such records to include, among other things, for each employee: names, addresses, occupation, rates of pay, hours worked if paid on basis other than salary or, only, if the worker is an H-1B worker employed on part-time basis, total additions to or deductions from pay each period by employee, and total wages paid each pay period, date of pay, and pay period covered by the payment by employee. Documentation of the benefits provided should also be available should they be requested by DOL including copies of documents provided to employees describing benefits, benefit plans describing the plans and rules for differentiating benefits among groups of workers and evidence of benefits actually provided to U.S. workers and H-1B workers.

current prevailing wage information and place it in the PAF with the correct prevailing wage survey.

**Violation #25: 5 of the PAF files reviewed which did contain the Wage Survey, did not also contain a worksheet or statement justifying the wage level that was selected by the employer.** This is not a violation of DOL regulations, but is recommended as good future practice for Employer's inclusion in future PAFs, should the DOL question the offered wages in the future.

In this case the USCIS has previously questioned the Employer's selection of the level I wage for certain H1B cases that have been filed. 3 of the PAF files reviewed contained position descriptions that directly contradict a level I wage selection, and 1 of the PAF files reviewed listed a level III wage at a client site, but a level I wage for the same position at the employer's office. The DOL is likely to view these documents/information as an indication that a level I wage is not appropriate for these positions and could determine that back wages are owed to those employees based on the more appropriate wage levels.

## 5. INCLUDE SUMMARY OF BENEFITS IN PAFs

**Violation #38: 5 of the PAFs reviewed did not contain a summary of benefits provided by Azimetry.** Every H-1B Azimetry is required to document and include a summary of benefits that are offered to "U.S." workers in the same occupational classification as H-1B non-immigrant workers. In instances where there are differences in benefits, Azimetry must also include a statement regarding how such differences were made and/or where applicable, and a statement as to whether some/all H-1B workers receive "home country" benefits. We recommend providing a current copy of the benefits offered or if needed drafting such a statement regarding Azimetry's current policy and placing it in every H-1B employee's PAF.

In this case, the benefits summary provides reference to the fact that benefits are the same as those offered to US employees but provides no actual description of the standard offered benefits.

## 6. INCLUDE POSTING NOTICE WITH ALL REQUIRED ATTESTATIONS IN ALL PAFs

**Violation #30: 2 of the PAF files reviewed contained a Posting Notice that was not posted at the actual work location.** The notices do not confirm their posting at the actual client site work locations. Azimetry should immediately post notices for all current employees at the current work location with the required language as described in **Appendix IV** and then recertify the LCAs for each employee.

## II. POTENTIAL LIABILITY FOR AZIMETRY

Potential penalties that Azimetry could face include: civil monetary penalties (CMPs), the payment of back-wages, debarment from certifying additional LCAs or filing USCIS immigrant and non-immigrant petitions for at least one year, as well as other administrative remedies deemed appropriate. Both the INA and the DOL regulations specify that an employer's liability for LCA violations (i.e. "remedies") depends on its level and degree of wrong-doing. Some violations must be "substantial" while others must be "willful" before civil monetary penalties (CMPs) and debarment may be imposed.

When ascertaining the civil monetary penalty to be assessed, the type of violation and other relevant factors must be considered by the DOL. The highest penalties are reserved for "willful"

failures to meet any of the conditions of the application that involve harm to U.S. workers. Some of the other factors that a DOL investigator may consider include: Azimetry's previous history of violation(s); the gravity of the violations; good faith efforts to comply with the law and regulations; Azimetry's explanation of the violation(s); Azimetry's future commitment to future compliance; and the extent to which Azimetry financially gained as a result of the violation, or the potential financial loss to Azimetry's workers.

The LCA provisions become applicable on the date the LCA is certified and/or on the date employment commences, whichever is earlier. Azimetry's submission and signature on the LCA (and other related documents) constitutes Azimetry's representation that the statements on the application are accurate and its acknowledgment and acceptance of the obligations of the program.

**Obligation to Pay Wages**

The failure to pay wages owed pursuant to the LCA is a frequent subject of investigation by the DOL, carrying with it significant fines and penalties. The LCA requires the payment of the higher of the prevailing wage or actual wage. DOL defines the actual wage as the wage rate paid to other individuals with similar experience and qualifications for the specific employment in question. The DOL can conduct a review to determine whether the appropriate wage level was selected in preparing the LCA. A Prevailing Wage Determination issued by a SESA, now known as SWA (State Workforce Agency), is regarded as a "safe harbor" supporting an Employer's determination of wage level so long as the correct information was provided to make that determination.

The obligation to pay the LCA wage starts when the H-1B worker enters Azimetry's employment. This means when he / she makes him/her-self available for "work" or is otherwise under your "control" (examples: waiting for an assignment, attending training or participating in interviews). Even if the H-1B worker is not made available for work but the H-1B petition is approved, Azimetry becomes obligated to pay the LCA rate of pay within 30 days of his / her entry to the U.S. from abroad, or within 60 days after becoming "eligible to work" when already in the U.S. at approval by USCIS. The "eligible to work" date is either the start date requested by Azimetry on the H-1B petition or the date the H-1B petition is approved, whichever is later.

An employer is also responsible for payment of wages when the employee is nonproductive due to an employer decision, such as a lack of assigned work or training. In that case, the Azimetry must pay the full pro-rata wage due or pay the hourly rate due. If the LCA is for part-time employment, the employer must pay for at least the number of hours on the Form I-129. If the Form I-129 has a range of hours, pay during nonproductive time must be at least an average of the number of hours normally worked by the H-1B worker. Under no circumstances should the H-1B worker be paid for less than the minimum number of hours on the Form I-129. In all cases, the H-1B worker must be paid the required wage for all hours performing work within the meaning of the Fair Labor Standards Act. If the H-1B worker is nonproductive for a condition unrelated to the employment and by a voluntary request or unable to work, the employer is not required to pay the wage unless required to pay such wages under the employee benefit plan, or applicable state or federal laws.

Azimetry no longer needs to compensate an H-1B worker if it has effected a bona fide termination of the employment relationship. When an effective termination arises is a contentious issue commonly litigated by employers subject to back wage liability. DOL has taken the position that there is no effective termination of an H-1B worker until USCIS has been

notified. DOL also requires Azimetry notify employee in writing with confirmation to establish the end of the employment relationship. We recommend Azimetry verify receipt and maintain this record in the PAF with proof of withdrawal of the H-1B Petition should an inquiry be conducted regarding a particular H-1B worker. If Azimetry does not undertake the necessary steps to terminate an employment relationship as DOL has outlined, there remains a risk of becoming subject to back wages with fines, penalties and interest.[5]

### The "Substantial" Standard

A "substantial" failure refers to a willful failure by an employer that constitutes a significant deviation from the terms and conditions of the labor condition application (among other factors not being analyzed herein).

### The "Willfulness" Standard

An employer's action is "willful" if it is a <u>knowing failure</u> or <u>reckless disregard</u> with respect to whether such conduct was contrary to the statute or applicable regulations.  Actions that are clearly inconsistent with the employer's attestation obligations (as evidenced by the LCA), are strong evidence that a violation is willful, if there is no evidence of mere carelessness or simple negligence.

Below is a Chart[6] Showing the Potential Liabilities that Azimetry could face based on the Final Determination by the Department of Labor.  We have included the maximum CMPs that may be assessed and the minimum debarment period.

| Type of Violation | Corresponding violation # from list of Compliance Problems and Chart of Violations | If Violation "Substantial" (per violation) | | If Violation "Willful" (per violation) | |
|---|---|---|---|---|---|
| *Misrepresentation[7] of Material Fact[8]* | 7, 8, 11 | • | $1000 | • | $5,000 |
| | | • | 1 year | • | 2 years |
| *Failed to Provide Notice of Filing the LCA* | 26, 27, 29, 30, 32, 33,35, 36, 37 | • | $1,000 | • | $5,000 |
| | | • | I year | • | 2 years |
| *Failed to accurately specify number of workers sought, the occupational classification, or the wage rate and conditions* | 15, 19, 22, 23, 38 | • | $1,000 | • $5,000 | |
| | | • | 1year | • 2 years | |
| *Failed to make required* | 33, 42, 43 | • | $1,000 | • $5,000 | |

---

[5] Failure to comply with the USCIS requirement that employers provide payment for return transportation home may also indicate continuing employment.
[6] This chart is partially adopted from the DOL Field Operations Handbook-(04/15/2006)

[7] **"Misrepresentation"** means that the employer made a statement on the LCA which was false at the time the LCA was filed.  The ER must exercise reasonable care and diligence to assure the accuracy of its LCA statements; failure to exercise such care and diligence may result in a false statement that could constitute a violation.  To constitute a misrepresentation, the false statement must be more than an inadvertent error. DOL Field Operations Handbook (04/15/2006); as cited by AILA InfoNet Doc. No. 09012871. (Posted 01/28/09)."
[8] **"Material fact"** refers to a significant item of information on the LCA.  It may include any of the following: the number of H-1B workers sought; the occupational classification for which the worker is sought; the rate of pay; the address where documentation is kept; the prevailing wage rate and its source; the period of employment; the additional ER Labor Condition Statements; and the location where the H-1B worker will work.

| | | | |
|---|---|---|---|
| *displacement inquiry of another Azimetry at a worksite where H-1B workers are placed* | | • 1 year | • 2 years |
| *Failed to take good faith steps in recruitment* | 33, 42 | • $1,000<br>• 1 yr | • $5,000<br>• 2 years |
| *Failed to otherwise comply (catch-all provision that includes violations not specifically mentioned above)* | 41, 48 | • $1,000 only if Wage & Hour impeded | • $1,000 only if Wage & Hour impeded |

## III. THE WAY FORWARD FOR AZIMETRY

Given Azimetry's serious and systemic LCA violations, we have already suggested remedial actions that should be taken right away to ensure future compliance. It is certainly in Azimetry's best interest to ensure its commitment to future compliance in an area of the law that is both extensive and complex due to the various nuances of the law, regulations, and policy in this area and the current policy of the Administration in aggressively pursuing Azimetrys for violations.

The Murthy Law Firm would be happy to assist Azimetry in ensuring compliance with the current law, regulations, and policies. Please let us know if you are interested in our law firm holding training sessions at Azimetry with the relevant personnel, to ensure that such persons are at least familiar with the law in this area and possibly to go over items outlined herein. Alternatively, we are available to assist Azimetry in re-certifying LCAs, providing a checklist / template of the documents that must be placed in the public access, and ensuring that posting notices and other related documents are compliant.

Please review the attached information and documents provided and schedule a follow-up consultation with the attorney to discuss any remaining questions and concerns that Azimetry may have.

Thank you for giving us the opportunity to work together. We know Immigration Matters!(SM)

Very Truly Yours,

Pamela Genise *

\* Admitted to practice in Virginia and Washington.  Not admitted in Maryland.  Practice limited to Immigration and Nationality law.

# APPENDIX I

# COMPLIANCE PROBLEMS

(Number corresponds to Columns on Comprehensive Company Chart)

Original signed LCA (20 CFR 655.760(a)(1))

1. LCA is missing
2. LCA is missing one or more pages
3. LCA case number on LCA and corresponding I-129 do NOT match
4. LCA is unsigned
5. LCA is undated
6. EMR[1] signature on LCA predates certification
7. Exemption claim on LCA does NOT match that claimed on most recently filed I-129
8. H1B dependency claimed on LCA does NOT match H1B dependency claim on corresponding / most recently filed I-129
9. H1B dependency claim on I-129 is incorrect
10. LCA work location/s do/es NOT match I-129 work location/s
11. LCA work location/s do/es NOT match EME's[2] current work location as provided by EMR
12. LCA certified AFTER employment commenced at worksite, according to employment dates provided by EMR
13. Proffered wage rate on LCA is less than prevailing wage on wage survey
14. ETA 9035CP (cover pages / instructions) not included in PAF[3]

Statement of Actual Wage (20 CFR 655.760(a)(2))

15. Actual wage statement is missing
16. Actual wage is lower than prevailing wage
17. Actual wage is lower than required for salary exemption claimed on corresponding / most recently filed I-129
18. Actual wage does NOT match proffered wage on I-129, LCA, Posting Notice, Actual Wage Memo, etc.

Actual Wage Memorandum (20 CFR 655.760(a)(3))

19. Actual wage memo is missing
20. Factors determining actual wage are insufficient
21. Actual wage memo does NOT discuss factors used to determine actual wage

Prevailing Wage Documentation (20 CFR 655.760(a)(4))

22. Wage survey/s used is missing
23. Wage survey/s used is outdated
24. LCA work location NOT within the MSA[4] covered by wage survey/s used
25. Worksheet / statement justifying wage level is missing / incomplete

Posting / Notification (20 CFR 655.760(a)(5) / 20 CFR 655.734(a))

26. Posting Notice is missing
27. Posting Notice NOT posted in at least 2 conspicuous locations
28. Posting Notice does NOT include dates posted

---

[1] Abbreviation for "Employer"
[2] Abbreviation for "Employee"
[3] Abbreviation for "Public Access File"
[4] Abbreviation for "Metropolitan Statistical Area"

29. Posting Notice does NOT include location/s posted
30. Posting Notice was NOT posted at ACTUAL worksite
31. Posting period is incorrect (either NOT posted for 10 full days, OR initiation of posting was NOT on or within 30 days preceding filing of the LCA)
32. Posting Notice / Attestation of posting is unsigned
33. Non-displacement / recruitment language on Posting Notice is inaccurate / incomplete (USCs[5] v. US workers; incorrect time period for non-displacement)
34. Number of EMEs for whom the LCA was submitted does NOT match the number of H1B workers sought, according to the Posting Notice
35. Posting Notice does not include mandatory complaint clause
36. Posting Notice for H1B Dependent EMR / Non-exempt EME does NOT include mandatory complaint clause regarding equal employment
37. Posting Notice for H1B Dependent EMR / Non-exempt EME does NOT include correct contact information for DOJ

Summary of Benefits (20 CFR 655.760(a)(6))

38. Summary of benefits and/or explanation for difference in benefits is missing

Change in Corporate Structure (20 CFR 655.760(a)(7))

39. Statement by representative of new employing entity, accepting all obligations, etc. of the LCA is missing

"Single Employer" definition (20 CFR 655.760(a)(8))

40. List of entities included as "Single Employer" is missing

List of Exempt H1B EMEs (20 CFR 655.760(a)(9))

41. List of EMR's exempt H1B EMEs is missing

Documentation of Recruitment (20 CFR 655.760(a)(10) / 20 CFR 655.739(i))

42. Attestation / documentation of recruitment is missing

Non-displacement Attestations (20 CFR 655.737(a) / 20 CFR 655.738(d)(5))

43. At least one non-displacement attestation is missing (secondary worksite only)
44. Non-displacement attestation is unsigned (secondary worksite only)
45. Non-displacement attestation does NOT refer to correct time period (secondary worksite only)
46. Non-displacement attestation does NOT include secondary worksite confirmation (secondary worksite only)
47. Non-displacement attestation refers to USCs instead of "U.S. workers" (secondary worksite only)

Copy of LCA to EME (20 CFR 655.734(a)(3))

48. Evidence that LCA was provided to EME is missing
49. Cannot determine date on which LCA was provided to EME
50. LCA not timely given to EME (no earlier than certification date and no later than date EME began employment at LCA location)

---

[5] Abbreviation for "United States citizen"

# APPENDIX II

| Employee's Name & Dates of Employment | LCA Number(s) | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 | 32 | 33 | 34 | 35 | 36 | 37 | 38 | 39 | 40 | 41 | 42 | 43 | 44 | 45 | 46 | 47 | 48 | 49 | 50 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Saurabh Malhotra 10/1/15-present | I-200-15012-898246 | | | | | | | | | | | | | | | | | | | | | | | X | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | I-200-15274-663272 | | | | | | | | | | | | | | X | X | | | | X | | | X | | | | X | | | | | | | | | | | | X | | | X | | | | | | | X | | |
| Gopinath Deepakbabu 9/8/16-present | I-200-15012-913846 | | | | | | | | | | | | | | X | X | | | | | | | | | | | X | | | | X | | | | | | | | X | | | X | | | | | | | X | X | |
| | I-200-16225-989210 | | | | | | | | | | | | | | X | X | | | | | | | | | | | X | | | | | | | | | | | | X | | | X | | | | | | | | | |
| Sujal Ringwala | I-200-16046-763053 | | | | | | | | | | | | | | X | X | | | | | | | | | | | X | | | | | | | | | | | | X | | | X | | | | | | | | X | |

# APPENDIX III

PAF Checklist H-1B Dependent Employer with Non Exempt Employee

## PUBLIC ACCESS FILE CHECKLIST

Within **one (1) working day** of filing the Labor Condition Application (LCA), the H1B petitioning employer must make available for public examination at its principle place of business or place of actual employment, all of the following documentation:

_____    Copy of the original certified LCA, signed by the petitioning employer's representative

_____    Statement of the actual wage rate to be paid to the H1B nonimmigrant, as provided for in the LCA

_____    Copy of the prevailing wage determination (or Collective Bargaining Agreement [CBA], if applicable)

_____    Memorandum explaining how the petitioning employer calculated the actual wage for the job (or CBA, if applicable)

_____    Summary of the benefits offered to U.S. workers in the same or similar occupational classification as the H1B worker

_____    If all employees do not receive the same benefits, a statement of the reasons for the differentiation in benefits

_____    Copy of the notification provided to the bargaining representative (if applicable)

_____    Copy of the posting notice/s of the LCA filing, including the date/s and location/s of the postings

_____    Evidence that a copy of the certified LCA was given to the H1B employee on or before the first day of employment or certification of the LCA, whichever is first

_____    Evidence of recruitment for the proffered position (may be copies of job postings / advertisements; or a memorandum summarizing the recruitment methods used)

_____    If the beneficiary will be working at a secondary location (ie: client site), a statement from the end-client, or a statement from a representative of the Petitioning employer who spoke with someone at the end-client company, confirming that no U.S. worker/s in a same or similar job classification have been or will be displaced for the period of 90 days before and 90 days after the commencement of the H1B worker's employment.

_____    If the petitioning employer undergoes a change in corporate structure, a sworn statement by a responsible official of the new employing entity, that it accepts all obligations, liabilities, and undertakings under the LCA/s filed by the predecessor entity, together with a list of each affected LCA and its certification date, along with a description of the actual wage system and Federal Employer ID Number (FEIN) of the new employing entity.

The records mentioned herein must be maintained for a period of **one year beyond the date of expiration of the LCA, or for one year from the withdrawal of the LCA, or for one year from the last day of employment of the H1B worker under the LCA.**

PAF Checklist for either NON-Dependent Employer OR a Dependent Employer with and Exempt Employee

## PUBLIC ACCESS FILE CHECKLIST

Within **one (1) working day** of filing the Labor Condition Application (LCA), the H1B petitioning employer must make available for public examination at its principle place of business or place of actual employment, all of the following documentation:

_____ Copy of the original certified LCA, signed by the petitioning employer's representative

_____ Statement of the actual wage rate to be paid to the H1B nonimmigrant, as provided for in the LCA

_____ Copy of the prevailing wage determination (or Collective Bargaining Agreement [CBA], if applicable)

_____ Memorandum explaining how the petitioning employer calculated the actual wage for the job (or CBA, if applicable)

_____ Summary of the benefits offered to U.S. workers in the same or similar occupational classification as the H1B worker

_____ If all employees do not receive the same benefits, a statement of the reasons for the differentiation in benefits

_____ Copy of the notification provided to the bargaining representative (if applicable)

_____ Copy of the posting notice/s of the LCA filing, including the date/s and location/s of the postings

_____ Evidence that a copy of the certified LCA was given to the H1B employee on or before the first day of employment or certification of the LCA, whichever is first

_____ List of all exempt employees (if for an exempt employee)

_____ If applicable, if the petitioning employer undergoes a change in corporate structure, a sworn statement by a responsible official of the new employing entity, that it accepts all obligations, liabilities, and undertakings under the LCA/s filed by the predecessor entity, together with a list of each affected LCA and its certification date, along with a description of the actual wage system and Federal Employer ID Number (FEIN) of the new employing entity.

The records mentioned herein must be maintained for a period of **one year beyond the date of expiration of the LCA, or for one year from the withdrawal of the LCA, or for one year from the last day of employment of the H1B worker under the LCA.**

### Appendix C: Worksheet for Use in Determining OES Wage Level

Employer's Job Title: _____
O*NET Title: _____
O*NET Code: _____

Date: _____
Reviewer: _____

| Indicator | Job Offer Requirements | O*NET-Usual Requirements | Comments | Wage Level Result |
|---|---|---|---|---|
| Step 1. Requirements | | | | 1 |
| Step 2. Experience | | | | |
| Step 3. Education | | | | |
| Step 4. Special Skills, Knowledge, Work Activities or Tasks? (Y/N) | | | | |
| Step 5. Licensure / Certification Required (Y/N) | | | | |
| Step 6. Supervisory Duties (Y/N) | | | | |
| | | | Sum: | |

**Statement of Actual Rate of Pay**

[INSERT DATE]

**RE:**    [INSERT BENEFICIARY NAME]

To be place in the Labor Condition Application Public Access File.

Name of Employer / H1B Petitioner:

Name of Employee / Beneficiary:

Proffered Position Title:

Actual Wage to be Paid:

Signed:

[INSERT NAME]
[INSERT TITLE]
[INSERT COMPANY NAME]

**Actual Wage Memorandum**

[INSERT DATE]

**RE:**    [INSERT BENEFICIARY NAME]

To be placed in the Labor Condition Application Public Access File

[INSERT COMPANY NAME] has approximately [INSERT # OF EMES] in the position of [INSERT POSITION TITLE], at the [INSERT ADDRESS OF ACTUAL WORK LOCATION] worksite.  The wage range for these employees is between [INSERT RANGE OF WAGE/S].

Within this range, an individual employee's salary is determined by careful consideration of the several factors, including, but not limited to:

- Level of education achieved (ie. Bachelor degree, Master degree, etc.)

- Years of related work experience

- Length of employment and/or tenure within the company

- Technical skills acquired

- Contribution toward new customer acquisition/s

- Language / communication abilities

- Supervision of other employees

- [INSERT ANY ADD'L FACTORS / SUBTRACT ANY UNUSED FACTORS LISTED ABOVE]

The above factors were considered when calculating the actual wage for [INSERT BENEFICIARY NAME].

Signed:

[NAME]
[TITLE
[INSERT COMPANY NAME]

## SUMMARY OF BENEFITS

[DATE]

RE:    [BENEFICIARY NAME]

[PETITIONER NAME] offers [ALL / H1B / U.S. WORKER] employees [TYPE] health insurance.  Employees may accept or waive this coverage.  Upon acceptance, a deduction of $[AMOUNT] is taken from the employee's payroll.  This plan [DOES / DOES NOT] include dental insurance.

In addition to the above health coverage, each employee is afforded [#] paid holidays. [PETITIONER NAME] also [DESCRIPTION OF VACATION / SICK LEAVE POLICY].

Benefits offered to H1B workers are the same as those offered to U.S. workers.

Signed:

[PETITIONER REPRESENTATIVE NAME]
[PETITIONER REPRESENTATIVE TITLE]

[PRINT ON END-CLIENT, INC. LETTERHEAD]

February 26, 2009

HR Department
Nexeon International Corporation
1250 East Diehl Road
Suite 401
Naperville, IL 60563

Re:   **Non-displacement Assurance for Placement of [BENEFICIARY] at
      [END-CLIENT WORK LOCATION]**

Dear Sir,

This is in response to your letter, dated [INSERT DATE], in which you requested
confirmation of the non-displacement of U.S. workers by [NAME OF END-CLIENT
COMPANY], in relation to the assignment of Nexeon employee [EMPLOYEE NAME],
[JOB TITLE], at our worksite (ADDRESS OF END-CLIENT COMPANY /
WORKSITE), beginning [DATE STARTED WORKING AT END-CLIENT
COMPANY].

We hereby confirm that no U.S. workers employed by [END-CLIENT COMPANY] as a
[JOB TITLE] (or other similar occupation) have been removed or terminated from this
location for at least 90 days before [DATE EMPLOYMENT BEGINS / BEGAN].
Furthermore, [END-CLIENT COMPANY] does not expect that any of U.S. workers in
the [JOB TITLE] or similar occupational classification will be displaced within the 90
days following [DATE EMPLOYMENT BEGINS / BEGAN].

We hope that this adequately addresses your concerns.

Sincerely,

[NAME]
[JOB TITLE]

**MURTHY LAW FIRM**
**10451 Mill Run Circle, Suite 100**
**Owings Mills, Maryland 21117**
**Telephone: 410.356.5440    Fax: 410.356.5669**
**Web Site: http://www.murthy.com**
**eMail: law@murthy.com**

### Memorandum

**RE: Department of Labor, Labor Condition Application Requirement for all H1B Petitions and Public Inspection File**

# IMPORTANT INFORMATION
# IMMEDIATE ACTION REQUIRED

This memorandum discusses the representations that a petitioning employer ("Employer") makes when executing a Labor Condition Application (LCA) in conjunction with the H1B petition process. The LCA requirements are provided for in 20 CFR 655-656.

Please be advised that this memorandum merely serves as general guidance in order to review the employer obligations associated with the LCA.  Accordingly, if the employer has questions as to specific procedures regarding the LCA and attestations, please schedule a consultation with the attorney at your earliest convenience.

In order to file an H1B petition with the United States Citizenship and Immigration Services (USCIS), the Employer must first file an LCA with the Department of Labor (DOL).

The Employer must make available the LCA and necessary support documentation for public examination at the Employer's principal place of business in the United States, or at the place of employment, within one working day after filing the LCA.

The LCA must list ALL intended places of employment. Please note that additional LCAs should be filed for any anticipated places of employment, *as a change of location that was not noted in the original H1B petition will require the filing of a new LCA.*

**I.     DEPARTMENT OF LABOR LCA PUBLIC INSPECTION FILE**

**WARNING: Employers must comply with all the rules and regulations pertaining to the Labor Condition Application. Failure to do so could lead to steep monetary penalties ranging from $3,000 to $35,000 per violation, as well as civil and criminal liabilities.**

**II.    LCA**

## A. LCA ATTESTATIONS

An Employer, prior to filing an H1B petition with USCIS, must file an LCA, Form ETA9035, with the DOL. By filing the LCA, the Employer attests to all of the following:

1. For the entire period of H1B authorized employment, the Employer will pay all H1B employees who have similar experience and qualifications for the specific position set forth in the LCA, "no less than the greater of the following:"

    a. The actual wage level paid by the Employer to all other individuals with similar experience and qualifications for the specific position in question; or

    b. The prevailing wage level for that specific occupational classification. The relevant wages are those paid in the geographic area where the H1B nonimmigrant will be employed.

2. The Employer shall continue to pay the H1B nonimmigrant the required wage for any time in nonproductive status due to a decision of the Employer or due to Employer's lack of permit or license.

3. The H1B nonimmigrant will be offered benefits and eligibility for benefits on the same basis and in accordance with the same criteria, as offered to U.S. workers.

4. The employment of H1B nonimmigrants in the specialty occupation will not adversely affect the working conditions of workers similarly employed. Working conditions include hours, shifts, vacation periods and fringe benefits.

5. The H1B nonimmigrants will be afforded working conditions on the same basis and in accordance with the same criteria, as offered to similarly employed U.S. workers.

6. On the date the LCA is signed and filed there is not a strike, lockout or work stoppage in the course of a labor dispute in the occupation in which H1B nonimmigrants will be employed at the place of employment. If such a strike or lockout occurs after the filing of the LCA, the employer will notify the Employment and Training Administration (ETA) within three days of the occurrence, and the LCA will not be used in support of petition filings with USCIS for H1B nonimmigrants to work in the same occupation at the place of employment until the ETA determines the strike or lockout has ceased.

7. **Within 30 days prior to or on the date of filing the LCA**, notice of the LCA has been provided to workers employed in the occupation in which H1B nonimmigrants will be employed through one of the following two methods:

    a. To the bargaining representative of workers in the occupation in which H1B nonimmigrants will be employed.

b. *If there is no bargaining representative, either through <u>physical posting</u> in two conspicuous locations for 10 consecutive days where H1B nonimmigrants will be employed or <u>through electronic notification</u> to employees in the occupational classification for which H1B nonimmigrants are being sought. .*

## B.  COPY OF LCA TO EMPLOYEE

A copy of the certified LCA, as well as a coy of the ETA 9035CP (Cover Pages), if requested, will be provided to each H1B nonimmigrant employee pursuant to the LCA, no later than the date that the H1B nonimmigrant reports to work at the place of employment.

## III.  THE PUBLIC INSPECTION FILE

An H1B petitioning Employer must maintain a Public Inspection File (PIF).

The PIF must, upon the DOL's or other party's request, be made available for inspection.

The PIF must be made available within one working day of the LCA filing and must be kept at either the employer's principal place of business, or at the beneficiary's place of actual employment.

The PIF must contain all of the following information:

1. A copy of the LCA, signed by the Employer's representative, including ETA 9035 (the actual form) and ETA 9035CP, the LCA cover pages.

2. Documentation providing the actual wage rate to be paid to the H1B worker admitted under the LCA.

3. A copy of the prevailing wage determination.

4. A memorandum explaining how the employer calculated the actual wage for the job, without identifying the H1B worker or the other workers who are similarly employed as the H1B worker for purposes of determining the actual wage. The documentation could be a memorandum summarizing the system used or a copy of the employer's standardized pay system.  (IE: A description of the company's internal wage system explaining what factors are used to determine an employee's wage, for example: Wage Surveys; Local Wage Data; Market Data; experience, academic qualification, productivity potential, etc.)

5. A summary of the benefits offered to United States workers in the same occupational classification as the H1B worker. If the employer is providing "home country" benefits, *(this takes place when an employee is coming to the U.S. for less than 90 days, Employer can still offer the home country benefits).* A notation should be made in the PIF. The summary need not include proprietary information, including the costs of benefits to the Employer, or the details of stock options or incentive distributions.

6.  If all employees are not offered the same benefits, a statement of how any differentiation of benefits is made.

7.  Evidence of (a) notification to the bargaining representative or (b) posting of notice of the LCA filing, including dates and locations of the posting.

8.  Evidence that a copy of the LCA was given to the H1B worker on or before the first day of employment.

9.  If the Employer undergoes a change in corporate structure, a sworn statement by a responsible official of the new employing entity that it accepts all the obligations, liabilities and undertakings under the LCA filed by the predecessor, together with a list of each affected LCA and its date of certification, and a description of the actual wage system and EIN of the new employing entity.

These records must be maintained for a period of <u>one year beyond the date of the LCA expiration, or one year from the withdrawal of the LCA, or one year from the last day of employment of the H1B worker under the LCA.</u>

## IV.   <u>ATTESTATIONS AS TO WAGES</u>

**Actual Wage**

The first attestation regarding the Actual Wage refers to the wage rate paid by the Employer to all other individuals with similar experience and qualifications for the H1B beneficiary's offered position. The following can be considered in determining the wage level: experience, qualifications, education, job responsibilities and functions, specialized knowledge, and other legitimate business factors.

Where there are other employees, with substantially similar experience and qualifications, as the position in question, the actual wage shall be the wage paid to such other employees. If there are no other employees with similar experience and qualifications, then the actual wage is the wage paid to the H1B employee by the Employer.

**Prevailing Wage**

The Department of Labor regulations do not require a specific methodology to determine the prevailing wage. The regulations specifically state that an employer may use the State Workforce Agency (SWA) determination, independent authoritative source, or other legitimate source of data to determine the prevailing wage. Please note that a prevailing wage issued by the SWA cannot be challenged at a later date as it meets the Department of Labor's "safe harbor" standard. However, in order to meet your request to promptly prepare and file the H1B petition, it is our office's standard practice to use the Department of Labor OES (Office of Employment Statistics)'s online wage library for determining prevailing wage for H1B employees rather than the SWA determination. Should you prefer our office to use a SWA determination, please notify us immediately, in writing, as it typically takes 30 days, after a request for prevailing wage is made, for the SWA to issue the prevailing wage. This will delay the filing of the H1B petition.

If the position is covered by a Collective Bargaining Agreement, the prevailing wage would be the wage stated in such an Agreement. If the DOL determines that the survey used by the Employer is not sufficient, the Employer may be liable for various penalties.

It is a violation of the wage provisions if the H1B worker is required to reimburse or pay for attorney's fees or other costs related to the preparation and filing of the H1B petition, and, if after deducting these fees or costs from the employee's wage the employee's wage would be below the wage required for the LCA, the Employer can be found to have violated the wage attestations.

## V.     ATTESTATION AS TO WORKING CONDITIONS

The Employment of an H1B worker must not adversely affect the working conditions of workers similarly employed in the geographic location of intended employment. Working conditions include hours, shifts, vacation periods and fringe benefits. In the event of a complaint, the Employer must present documentation to the DOL establishing that the working conditions of its H1B employees and similarly employed workers are similar to those within comparable business establishments.

## VI.    THE POSTING NOTICE

If there is no bargaining representative, the Employer, **on or within 30 days before the date the LCA is filed** with the DOL, must provide notice of the filing of the LCA.

The notice should include the following:

1. That H1B workers are sought;
2. The number being sought;
3. The occupational classification;
4. The wages offered;
5. The period of employment;
6. The locations at which the H1B employee works; and
7. That the LCA is available for public inspection.

The notice must be posted in at least **two conspicuous locations at the work site for at least 10 consecutive days**. We will provide the Employer the required notice. The notice must contain the following statement.

Complaints alleging misrepresentation of material facts in the labor condition application and/or failure to comply with the terms of the labor condition application may be filed with any office of the Wage and Hour Division of the United States Department of Labor.

For public and DOL inspection, the Employer must retain copies of the posted notice with a notation as to the dates and locations of posting.   As previously mentioned, **the latest date that the notice must first be posted is the date the LCA is filed with DOL.**

Once the employer receives, signs, and returns the H1B petition package, our firm will file the LCA and email the employer the certified copy which must be printed, signed, and then either faxed back to our office (410.356.5669), or re-scanned and emailed back

to the paralegal in order to file the H1B petition with USCIS.  Please note that you should begin the posting of the notice before you return the H1B petition package to our office.

Please note that the notice requirement is the sole responsibility of the H1B employer and is not verified by our office.

If there is a bargaining representative, the notice should be sent by certified mail, return receipt requested to that representative, and also contain the above recitation.

The LCA must be posted at each location where the H1B employee will be performing services pursuant to his or her employment. These locations must be listed on LCA and on the H1B petition.

The notification can also be made by electronic means. Posting on the Employer's home page or electronic bulletin board is allowed, if employees have direct access to these resources.  Posting must be by the means ordinarily used by the employer to communicate with its employees about job vacancies or promotion opportunities.

## VII.    EMPLOYER'S CONSULTING OBLIGATIONS

Any material changes in the employment described in the H1B petition require that a new LCA be filed. The general rule is that whenever a new LCA is required, a new H1B petition or an H1B amendment may also be required.

## VIII.    CONCLUSION

This memorandum is designed to provide basic information regarding the LCA and does not provide case specific advice. Please schedule a consultation with an Attorney in our office should you not understand all or part of the contents of this memorandum or if you need case-specific questions answered regarding LCA obligations.

If you are an H1B dependent-employer and do not already understand the additional attestations associated with LCA's certified on behalf of non-exempt employees, please also schedule a consultation with an Attorney.

We look forward to continuing to work with you throughout the H1B process.

# APPENDIX IV

Sample LCA Notice: Exempt Employee at either Dependent or Non-Dependent Employer

# Notice

As the workers of [NAME OF END-CLIENT] do not have a collective bargaining representative, we therefore notify any potentially affected workers of the following:

- [NAME OF PETITIONER] is seeking H1B workers for employment at [INSERT NAME OF END-CLIENT].

- [NAME OF PETITIONER] is presently seeking [# OF H1B WORKERS] H1B worker/s for hire.

- [NAME OF PETITIONER] is seeking to employ a [JOB TITLE].

- [NAME OF PETITIONER] is offering an [ANNUAL / HOURLY] salary of $[AMOUNT OF SALARY / HOURLY WAGE] and will include standard benefits.

- The expected period of employment for this position is from [REQUESTED EMPLOYMENT START DATE] to [REQUESTED EMPLOYMENT END DATE].

- The H1B worker will be employed by [NAME OF PETITIONER], whose principal place of business is located at: [COMPLETE ADDRESS OF PETITIONER]. His/Her work location will be [COMPLETE ADDRESS OF ACTUAL WORK LOCATION/S].

- The LCA is available for public inspection at [NAME OF PETITIONER]'s principal place of business, located at: [COMPLETE ADDRESS OF PETITIONER].

**Please Note: Complaints alleging misrepresentation of material facts in the labor condition application and/or failure to comply with the terms of the labor condition application may be filed with any office of the Wage and Hour Division of the United States Department of Labor.**

_____
**DATE POSTED**

_____
**DATE REMOVED**

Sample LCA Notice: Exempt Employee at either Dependent or Non-Dependent Employer

## DECLARATION OF POSTING

The attached notice of the filing of a Labor Condition Application was posted in the following two conspicuous places:

a) _____

b) _____

at [COMPLETE ADDRESS OF ACTUAL WORK LOCATION] for a period of at least ten (10)

consecutive days, from _____ to _____.

Dated this _____ day of _____ 20___.

_____
[NAME AND TITLE OF PERSON PROVIDING
PROOF THAT POSTING OCCURRED]

Sample LCA Notice: H-1B Dependent Employer with a Non-exempt Employee that will be working at the Petitioner's office

# Notice

As the workers of [PETITIONER] do not have a collective bargaining representative, we therefore notify any potentially affected workers of the following:

- [NAME OF PETITIONER] is seeking to employ H1B in its Company.

- [NAME OF PETITIONER] is presently seeking [# OF H1B WORKERS FOR WHICH LCA WAS CERTIFIED] H1B worker/s for hire.

- [NAME OF PETITIONER] is seeking to employ a [JOB TITLE].

- [NAME OF PETITIONER] is offering an [ANNUAL / HOURLY] salary of $[AMOUNT OF SALARY / HOURLY WAGE] and will include standard benefits.

- The expected period of employment for this position is from [REQUESTED EMPLOYMENT START DATE] to [REQUESTED EMPLOYMENT END DATE].

- The H1B worker will be employed by [NAME OF PETITIONER], whose principal place of business is located at: [COMPLETE ADDRESS OF PETITIONER]. His/Her work location will be [COMPLETE ADDRESS OF ACTUAL WORK LOCATION].

- The LCA is available for public inspection at [NAME OF PETITIONER]'s principal place of business, located at: [COMPLETE ADDRESS OF PETITIONER].

- No U.S workers have been or will be displaced within this occupational classification by [NAME OF PETITIONER] for the period of 90 days before and 90 days following the filing of this H1B petition.

- The recruitment of U.S. workers for this position was completed in good faith, using industry-wide standards and for offers of compensation at or above the required wage for the position.

Please Note: Complaints alleging misrepresentation of material facts in the labor condition application and/or failure to comply with the terms of the labor condition application may be filed with any office of the Wage and Hour Division of the United States Department of Labor. Complaints alleging failure to offer employment to an equally or better qualified U.S. applicant or an employer's misrepresentation regarding such offers of employment may be filed with the Department of Justice, Civil Rights Division, Office of Special Counsel for Immigration-Related Unfair Employment Practices, 950 Pennsylvania Avenue, NW., Washington, DC 20530. Telephone:   1 (800) 255-8155 (employers), 1 (800) 255-7688 (employees); Web address: http://www.usdoj.gov/crt/osc

**DATE POSTED**                                        **DATE REMOVED**

Sample LCA Notice: H-1B Dependent Employer with a Non-exempt Employee that will be working at the Petitioner's office

## DECLARATION OF POSTING

The attached notice of the filing of a Labor Condition Application was posted in the following two conspicuous places:

a) _____

b) _____

at [COMPLETE ADDRESS OF ACTUAL WORK LOCATION] for a period of at least ten (10)

consecutive days, from _____ to _____.

Dated this \_\_\_\_ day of _____20\_\_\_.

_____
[NAME, TITLE, AND COMPANY OF
PERSON PROVIDING PROOF
THAT THIS POSTING WAS MADE]

Sample LCA Notice: H-1B Dependent Employer with a Non-exempt Employee working at a Secondary Worksite

# Notice

As the workers of [NAME OF END-CLIENT] do not have a collective bargaining representative, we therefore notify any potentially affected workers of the following:

- [NAME OF PETITIONER] is seeking to employ H1B workers for placement at [NAME OF END-CLIENT].

- [NAME OF PETITIONER] is presently seeking [# OF H1B WORKERS FOR WHICH LCA WAS CERTIFIED] H1B worker/s for hire.

- [NAME OF PETITIONER] is seeking to employ a [JOB TITLE].

- [NAME OF PETITIONER] is offering an [ANNUAL / HOURLY] salary of $[AMOUNT OF SALARY / HOURLY WAGE] and will include standard benefits.

- The expected period of employment for this position is from [REQUESTED EMPLOYMENT START DATE] to [REQUESTED EMPLOYMENT END DATE].

- The H1B worker will be employed by [NAME OF PETITIONER], whose principal place of business is located at: [COMPLETE ADDRESS OF PETITIONER]. His/Her work location will be [COMPLETE ADDRESS OF ACTUAL WORK LOCATION].

- The LCA is available for public inspection at [NAME OF PETITIONER]'s principal place of business, located at: [COMPLETE ADDRESS OF PETITIONER].

- No U.S workers have been or will be displaced within this occupational classification by [NAME OF PETITIONER] for the period of 90 days before and 90 days following the filing of this H1B petition.

- No U.S. workers have been or will be displaced within this occupational classification at [INSERT END-CLIENT'S NAME AND ADDRESS] for the period of 90 days before and 90 days following the commencement of the H1B worker's employment at the previously stated location.

- The recruitment of U.S. workers for this position was completed in good faith, using industry-wide standards and for offers of compensation at or above the required wage for the position.

Please Note: Complaints alleging misrepresentation of material facts in the labor condition application and/or failure to comply with the terms of the labor condition application may be filed with any office of the Wage and Hour Division of the United States Department of Labor.  Complaints alleging failure to offer employment to an equally or better qualified U.S. applicant or an employer's misrepresentation regarding such offers of employment may be filed with the Department of Justice, Civil Rights Division, Office of Special Counsel for Immigration-Related Unfair Employment Practices, 950 Pennsylvania Avenue. NW., Washington, DC 20530, Telephone:  1 (800) 255-8155 (employers), 1 (800) 255-7688 (employees):  Web address:  http://www.usdoj.gov/crt/osc

_____                                _____
**DATE POSTED**                                                      **DATE REMOVED**

Sample LCA Notice: H-1B Dependent Employer with a Non-exempt Employee working at a Secondary Worksite

## DECLARATION OF POSTING

The attached notice of the filing of a Labor Condition Application was posted in the following two conspicuous places:

a) _____

b) _____

at [COMPLETE ADDRESS OF ACTUAL WORK LOCATION] for a period of at least ten (10)

consecutive days, from _____ to _____.

Dated this _____ day of _____ 20___.

_____
[NAME, TITLE, AND COMPANY OF
PERSON PROVIDING PROOF
THAT THIS POSTING WAS MADE]

First Name

Last Name      Employment dates
(first date is from interview, second date in bold is Vijay's date, third date is DOL's date)

Gender

TOTAL MONIES DUE

H1B assessed LCA level

LCA rate of pay

LCA job title

Job Title per interview

Job level per interview

EE edu + experience per interview

Job requirements per interview

Job requirements per CLOS

EE qualifications per CLOS

JOB REQUIRE per ads

DOL level

Out of State

H-4s


Comments/
Notes