UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR18-0214JLR |
| Plaintiff, | ORDER |
| v. | |
| PRADYUMNA KUMAR SAMAL, | |
| Defendant. | |

## I.  INTRODUCTION

Before the court is *pro se* Defendant Pradyumna Kumar Samal's second motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1). (Mot. (Dkt. # 125); Reply (Dkt. # 135).) Plaintiff the United States of America ("the Government") opposes Mr. Samal's motion. (Resp. (Dkt. # 129).) The court has considered Mr. Samal's motion, the parties' submissions in support of and in opposition to the motion, the relevant portions of the record, and the applicable law. Being fully advised, the court DENIES Mr. Samal's motion.

ORDER - 1

## II.     BACKGROUND

Mr. Samal is a 53-year-old inmate who is currently detained at Federal Detention Center ("FDC") SeaTac. (*See* Presentence Investigation Report ("PSR") (Dkt. # 65 (sealed)); Mot. at 1.) He is in prison for his leading role in an H-1B visa fraud scheme. (*See generally* Plea Agreement (Dkt. # 51) at 6-9 (stating that Mr. Samal and his companies submitted fraudulent work visa petitions for foreign-national employees by means of U.S. mail and failed to pay over employment taxes to the Internal Revenue Service ("IRS") for the certain time periods in 2017 and 2018); 2d Superseding Information (Dkt. # 47) (same); PSR.) Mr. Samal pleaded guilty to one count of mail fraud in violation of 18 U.S.C. § 1341 and one count of failure to collect or pay over tax in violation of 26 U.S.C. § 7202. (*See generally* Plea Agreement.) On September 20, 2019, the court sentenced Mr. Samal to eighty-seven months of imprisonment followed by three years of supervised release. (*See* 9/20/19 Minute Entry (Dkt. # 82); Judgment (Dkt. # 83).) He was remanded into custody following his sentencing hearing, and his projected release date is November 1, 2023. (*See* 9/20/19 Minute Entry; Resp., Ex. 1.)

On November 13, 2020, Mr. Samal filed his first motion for compassion release. (*See* 1st Comp. Release Mot. (Dkt. # 104).) Mr. Samal's primary arguments were that his medical conditions and alleged resulting heightened vulnerability to COVID-19, as well as the general conditions of confinement at FDC SeaTac, constituted extraordinary and compelling circumstances justifying compassionate release. (*See generally id.* at 2, 6-9, 13-17.) The court denied Mr. Samal's motion on December 29, 2020. (*See* 12/29/20 Order (Dkt. # 121).)

1   Mr. Samal filed the instant motion for compassionate release on February 15,
2   2023, raising many of the same arguments that were included in his first motion for
3   compassionate release.  (*See generally* Mot.)

### III.   ANALYSIS

5   The court begins by setting forth the standard of review before turning to its
6   analysis of Mr. Samal's motion.

**A.   Standard for Compassionate Release**

8   A court generally may not correct or modify a prison sentence once it has been
9   imposed, unless permitted by statute or by Federal Rule of Criminal Procedure 35.
10  *United States v. Penna*, 315 F.3d 509, 511 (9th Cir. 2003); *see also Dillon v. United*
11  *States*, 506 U.S. 817, 824-25 (2010).  18 U.S.C. § 3582(c)(1), as amended by the First
12  Step Act of 2018, "allows certain inmates to seek a form of sentence modification,"
13  commonly referred to as compassionate release, "by filing motions to that effect with the
14  district court."  *See United States v. King*, 24 F.4th 1226, 1228 (9th Cir. 2022); *Riley v.*
15  *United States*, No. C19-1522JLR, 2020 WL 1819838, at *5 (W.D. Wash. Apr. 10, 2020).
16  Under § 3582(c)(1), courts have the authority to reduce a sentence upon the motion of an
17  inmate if three conditions are met:  (1) the inmate has either exhausted their
18  administrative appeal rights of the Bureau of Prisons' ("BOP") failure to bring such a
19  motion on the inmate's behalf or has waited until 30 days after the applicable warden has
20  received such a request; (2) the inmate has established "extraordinary and compelling
21  reasons" for the requested sentence reduction; and (3) the reduction is consistent with
22  "applicable policy statements" issued by the United States Sentencing Commission.  *See*

18 U.S.C. § 3582(c)(1)(A)(i); *see also Riley*, 2020 WL 1819838, at *5. If the inmate meets all three conditions, the court must consider the sentencing factors set forth in 18 U.S.C. § 3553(a) when deciding whether compassionate release is appropriate. *See* 18 U.S.C. § 3582(c)(1)(A).

The Sentencing Commission's policy statement referenced in 18 U.S.C. § 3582(c)(1)(A)(i) provides, in relevant part, that a defendant may be eligible for compassionate release if "extraordinary and compelling reasons warrant the reduction"; the "defendant is not a danger to the safety of any other person or to the community"; and the "reduction is consistent with this policy statement." U.S.S.G. § 1B1.13; *id.* cmt. n.1 (outlining four categories of circumstances that may constitute "extraordinary and compelling reasons" for a sentence reduction).

The Ninth Circuit, however, has held that U.S.S.G. § 1B1.13 "is not an 'applicable policy statement' for 18 U.S.C. § 3582(c)(1)(A) motions filed by a defendant." *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021). Therefore, the "Sentencing Commission's statements in U.S.S.G. § 1B1.13 may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding." *Id.*; *see also United States v. Van Cleave*, No. CR03-0247RSL, 2020 WL 2800769, at *5 (W.D. Wash. May 29, 2020) (referring to the policy statement as "persuasive, but not binding").

**B.     Exhaustion of Administrative Remedies**

Before considering the merits of Mr. Samal's motion, the court must determine whether he has met the statutory exhaustion requirement for compassionate release. *See* 18 U.S.C. § 3582(c)(1)(A). Where, as here, the director of the BOP has not filed the

ORDER - 4

motion on defendant's behalf, the court may consider the motion only if defendant has requested that the BOP make such a motion and either (i) defendant has "fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf," or (ii) 30 days have elapsed since the "warden of the defendant's facility" received a compassionate-release request from defendant. *United States v. Keller*, 2 F. 4th 1278, 1281 (9th Cir. 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)).  The Ninth Circuit has held that "§ 3582(c)(1)(A)'s administrative exhaustion requirement imposes a mandatory claim-processing rule that must be enforced when properly invoked," rather than a rule that deprives this court of subject matter jurisdiction. *Keller*, 2 F. 4th at 1282.  "In other words, if raised by the government in opposition to a motion for compassionate release, the exhaustion requirement must be enforced, but if the government does not raise the exhaustion requirement, it may be waived as a ground for opposing compassionate release." *United States v. Ortiz*, No. CR12-0062RSL, 2023 WL 1781565, at *3 (W.D. Wash. Feb. 6, 2023).

On July 14, 2020, Mr. Samal requested a reduction in sentence based on his vulnerable medical conditions in light of the concerns of COVID-19.  (Mot. at 2 (citing 1st Comp. Release Mot., Ex. D at 8).)  The warden at FDC SeaTac denied his request on July 30, 2020.  (*Id.* (citing 1st Comp. Release Mot., Ex. D at 8-9).)  Mr. Samal then made an administrative request for compassionate release, again based on his medical conditions and COVID-19, to the warden at FDC SeaTac on August 12, 2020, which was denied on September 10, 2020.  (*See id.* (citing 1st Comp. Release Mot., Ex. C at 1, 3);

//

*see also id.* (stating that Mr. Samal appealed the warden's denial but never received a response regarding his appeal (citing 1st Comp. Release Mot., Ex. D at 1)).[1])

However, Mr. Samal did not mention his claim that the BOP has wrongfully denied him earned time credits that he is eligible to receive under the First Step Act in his July and August 2020 administrative requests for compassionate release/a reduction in sentence. (*See generally* 1st Comp. Release Mot., Ex. D at 8; *id.*, Ex. C at 1.) Thus, that claim has not been exhausted.[2] *See Ortiz*, 2023 WL 1781565, at *4 ("Exhaustion in the compassionate release context requires that the request to the warden identify '[t]he extraordinary or compelling circumstances that the inmate believes warrant consideration.'" (citing 28 C.F.R. § 571.61(a)(1))).

//

---

[1] It is unclear whether Mr. Samal's July and August 2020 requests, which served as the predicates for Mr. Samal's first motion for compassionate release (*see generally* 1st Comp. Release Mot. at 3), can serve as the predicates for his second motion for compassionate release. *See, e.g.*, *Keller*, 2 F.4th at 1283 ("[T]he July 2020 request served as the predicate for Keller's first motion in the district court, which was denied in September 2020, and could not have initiated the administrative process for his January 2021 motion, which was itself premised on Keller's claim of changed circumstances."). However, the court need not resolve this issue because the Government has not raised an exhaustion objection in its response. (*See* Resp.)

[2] The Government notes that "[a]n inmate who wishes to challenge a BOP program must do so by first satisfying the administrative exhaustion requirements." (Resp. at 2.) The BOP has an established Administrative Remedy Process for inmates wanting to challenge "any aspect of his/her own confinement," *see* 28 C.F.R. § 542.10(a), including challenges to BOP's computation of an inmate's sentence, *see United States v. Wilson*, 503 U.S. 329, 335 (1992) (explaining that prisoners may be "able to seek judicial review of [their sentence] computations after exhausting their administrative remedies"). Thus, Mr. Samal was required to satisfy such procedures before raising a challenge to the BOP's computation of his sentence. *See Ortiz*, 2023 WL 1781565, at *4 n.2. Although it is unclear whether he has satisfied such requirements (*see generally* Mot.), the court need not resolve this issue because his arguments fail on the merits (*see infra* § III.C).

ORDER - 6

Mr. Samal's motion for compassionate release is therefore denied to the extent it is based on unexhausted arguments. However, because exhaustion requirements are not jurisdictional, *Keller*, 2 F. 4th at 1282, and the Government has not properly raised an exhaustion objection (*see* Resp.), the court considers all of Mr. Samal's arguments when it examines whether he has raised an "extraordinary and compelling circumstance" justifying his release.

**C.      Extraordinary and Compelling Circumstances**

Mr. Samal bears the burden of establishing that "extraordinary and compelling reasons" exist that justify compassionate release. *See* 18 U.S.C. § 3582(c)(1)(A)(i); *United States v. Suryan*, No. CR19-0082RAJ, 2021 WL 3510423, at *2 (W.D. Wash. Aug. 10, 2021). Mr. Samal argues that he is entitled to compassionate release (1) because of the impact COVID-19 has had on his conditions of confinement; (2) because his medical conditions place him at greater risk of developing serious complications from COVID-19; and (3) because the BOP has wrongfully denied him earned time credits that he is eligible to receive under the First Step Act. (*See* Mot. at 1-3, 5-7.)

   1. <u>Conditions of Confinement at FDC SeaTac</u>

Mr. Samal argues that COVID-19's impact on his conditions of confinement warrants a reduction in sentence. (*See* Mot. at 3.) The court need not reiterate the widely known information regarding the symptoms of COVID-19, the devastating global impact of the virus, and the unprecedented challenges COVID-19 created for federal prisons. *See United States v. Rollness*, No. CR06-0041RSL, 2021 WL 4476920, at *4 (W.D.

1 | Wash. Sept. 30, 2021) (discussing COVID-19's impact on prisons).  Moreover, the court

2 | does not discount the dangers associated with COVID-19 nor the difficulties prisons face

3 | in preventing and containing outbreaks.

4 | However, "general conditions that affect inmates indiscriminately throughout the

5 | prison are insufficient to support an individual defendant's claim for compassionate

6 | release." *United States v. Bolden*, No. CR16-0320RSM, 2020 WL 4286820, at *7 (W.D.

7 | Wash. July 27, 2020); *United States v. Veletanlic*, No. CR18-0162JLR, 2021 WL

8 | 5205706, at *4 (W.D. Wash. Nov. 9, 2021) (rejecting argument that the general

9 | "conditions at [defendant's prison] warrant release, including the number of COVID-19

10 | infections and deaths, the lax implementation and enforcement of COVID-19 prevention

11 | policies, the impossibility of maintaining social distancing, and the unhygienic living

12 | situations"); *United States v. Ruelas-Payan*, No. CR17-0229JLR, 2021 WL 5847587, at

13 | *3 (W.D. Wash. Dec. 9, 2021) (rejecting similar arguments).  "Extraordinary and

14 | compelling" circumstances are not established by "the mere elevated risk of contracting a

15 | pandemic virus in prison, even if such a higher risk exists." *Riley*, 2020 WL 1819838, at

16 | *7.  Courts have also rejected generalized claims "that [a defendant's] period of

17 | incarceration, served during the time of Bureau of Prisons' COVID-19 restrictions, has

18 | presented harsher punishment and made this past year more difficult." *See Suryan*, 2021

19 | WL 3510423, at *3 (stating that BOP lockdown "conditions, while challenging, do not

20 | present an extraordinary and compelling reason to warrant his early release").

21 | Accordingly, the court finds that Mr. Samal's conditions of confinement do not constitute

22 | //

"extraordinary and compelling" circumstances warranting compassionate release. *See Suryan*, 2021 WL 3510423, at *3.

### 2. Risk of Developing Severe Complications From COVID-19

Mr. Samal argues that his underlying medical "ailments" make him more susceptible to suffering severe complications from COVID-19 and amount to "extraordinary and compelling reasons" warranting his release. (*See* Mot. at 2, 5-6.) Specifically, Mr. Samal claims that: (1) he has a medical history of "heart-health illnesses" (e.g., "left axis deviation, right bundle branch block, and abnormal electrocardiogram"); (2) BOP records "reflect current diagnoses of" high cholesterol, hypertension (i.e., high blood pressure), hypothyroidism, and "certain indicators of mental illness"; and (3) he has "reported headaches, cold intolerance, and fatigue." (*Id.* at 2 (first citing Ex. B to 1st Comp. Release Mot. (Dkt. # 107 (sealed)); and then citing Ex. A to 1st Comp. Release Mot. (Dkt. # 106 (sealed))).)

To begin, although Mr. Samal cites various medical "ailments" as a basis for compassionate release, the vast majority of the ailments he alleges lack any meaningful factual basis. For example, BOP medical records do not show that Mr. Samal has appeared distressed, lethargic, disheveled, and unkempt, as he claims in his motion; rather, the records show that BOP medical providers have consistently rated Mr. Samal's mental condition as normal. (*See* Ex. A to 1st Comp. Release Mot. at 34; Ex. 1 to 1st Comp. Release Resp. (Dkt. # 115 (sealed)) at 4, 9, 42, 51.) Other ailments, like his cold intolerance and fatigue, are not supported by any independent diagnosis, but are simply symptoms that he self-reported at some medical appointments but denied at others. (*See*

Medical Records (Dkt. # 132 (sealed)) at 2 (denying fatigue); Ex. 1 to 1st Comp. Release Resp. at 65; Ex. A to 1st Comp. Release Mot. at 50.)  Additionally, although it is unclear whether his headaches are supported by an independent diagnosis, his medical records list his headaches as having "[r]esolved" and Mr. Samal has denied having headaches at a number of medical appointments.  (Medical Records at 15; *see also id.* at 2 (denying headaches); Ex. 1 to 1st Comp. Release Resp. at 26, 48 (same).)  Finally, Mr. Samal's reference to "heart-health illnesses" is supported by no recent evidence, and instead relies on a five-year-old ECG graph.  (*See* Mot. at 2 (citing Ex. B to 1st Comp. Release Mot.).)  In fact, his medical records reflect that he consistently has denied any cardiovascular disease and that his medical providers have observed no cardiovascular abnormalities.[3]  (*See* Ex. 1 to 1st Comp. Release Resp. at 3, 8, 13, 16, 22, 35, 41, 48, 50, 56, 65; Ex. A to 1st Comp. Release Mot. at 38, 47.)

      A review of Mr. Samal's medical records does, however, confirm that he suffers from hypertension, high cholesterol, and hypothyroidism.  (*See* Medical Records at 2, 6, 15, 28; *see also id.* at 2, 6, 26 (documenting the medication that Mr. Samal is on for his hypertension and hypothyroidism).)  The CDC has not identified hypothyroidism or high cholesterol as conditions that may make a person more likely to suffer severe complications from COVID-19.  *See People with Certain Medical Conditions*, *supra*.

---

[3] Even if Mr. Samal had substantiated the above-mentioned "ailments," the court's conclusion (*see infra*) would remain unchanged because Mr. Samal is fully vaccinated against COVID-19 (*see* Medical Records at 40) and few, if any, of these ailments would place Mr. Samal at greater risk for COVID-19 complications, *Rollness*, 2021 WL 4476920, at *5 (citing *People with Certain Medical Conditions*, CDC (Feb. 10, 2023), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html).

Additionally, although the CDC lists hypertension as a condition that could "possibly" make a person more likely to get severely ill from COVID-19, the most recent CDC findings state that it is "inconclusive" whether hypertension increases the risk of a severe COVID-19 outcome. *See People with Certain Medical Conditions*, *supra*; *United States v. Kerfoot*, No. CR06-0252TSZ, 2022 WL 990539, at *2 (W.D. Wash. Apr. 1, 2022) (citing *Underlying Medical Conditions Associated with Higher Risk for Severe COVID-19*, CDC (Feb. 9, 2023), https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-care/underlyingconditions.html). Accordingly, of the ailments Mr. Samal discusses in his motion, the court finds that he suffers from one condition—hypertension—that *potentially* places him at greater risk for COVID-19 complications.

That potential risk, however, is significantly lessened by that fact that Mr. Samal has been fully vaccinated against COVID-19. Mr. Samal's medical records indicate that he received one dose of the Johnson and Johnson COVID-19 vaccine and one does of the Pfizer COVID-19 vaccine. (*See* Medical Records at 40.) "[D]istrict courts across the country, including within this Circuit, have held almost uniformly that a defendant's vaccination undercuts any claims of 'extraordinary and compelling reasons' based on a high risk of infection." *United States v. Smith*, 538 F. Supp. 3d 990, 996 & n.8 (E.D. Cal. 2021) (collecting cases); *see also United States v. Grummer*, 519 F. Supp. 3d 760, 763 (S.D. Cal. 2021) (collecting cases concluding that the risks posed by COVID-19 are lessened through vaccination); *United States v. Adams*, No. CR14-0181JCC, 2021 WL 2073389, at *1 (W.D. Wash. May 24, 2021) (noting that "[m]any courts have concluded that, [in light of being fully vaccinated], health conditions no longer represent an

extraordinary and compelling reason warranting a reduction in sentence"). While no vaccine is 100% effective, studies from the Centers for Disease Control and Prevention indicate that Mr. Samal's risk of infection is low given his vaccination and, furthermore, that vaccination reduces his risk of severe illness if infected.[4] *See, e.g.*, *United States v. Weems*, No. CR15-0089RSL, 2022 WL 17586010, at *6 (W.D. Wash. Dec. 12, 2022) ("Now, almost two years after vaccines first became available, their effectiveness is widely accepted." (citing *COVID-19 Vaccines Are Effective*, CDC (June 29, 2022), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/index.html)); *United States v. Stringer*, No. CR18-0157RAJ, 2021 WL 3565430, at *3 (W.D. Wash. Aug. 12, 2021) (stating that the vaccine "substantially reduces the likelihood of Mr. Stringer contracting the virus" and protects against the risk of "developing severe complications . . . should he become infected," even in light of his diabetes and hypertension).

At this time, because Mr. Samal is fully vaccinated (Medical Records at 40) and his hypertension appears to be well-managed (*id.* at 2, 6, 26), the court finds that his risk of developing severe complications from infection due to his medical conditions does not amount to an "extraordinary and compelling" reason for compassionate release.[5]

---

[4] *See also, e.g.*, *Bolden*, 2021 WL 3269636, at *5 n.1 (first citing *COVID-19 Vaccines Work*, CDC (June 28, 2022), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/work.html; and then citing *The Possibility of COVID-19 after Vaccination: Breakthrough Infections*, CDC (June 23, 2022), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/why-measure-effectiveness/breakthrough-cases.html).

[5] The court's conclusion is additionally supported by the fact that FDC SeaTac, where Mr. Samal is housed, has only one (1) active COVID-19 case. *See COVID-19 Update*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited March 9, 2023)).

3. <u>Denial of Earned Time Credits</u>

Mr. Samal claims that the BOP improperly denied him earned time credits that he is eligible to receive under the First Step Act and that the BOP's conduct amounts to an "extraordinary and compelling reason" warranting his release. (Mot. at 1-2, 7 (stating that the BOP denied him such credits because of his immigration detainer).) Although Mr. Samal acknowledges that the BOP has since applied his First Step Act earned time credits to his sentence, he argues that it has only done so with respect to his eligibility for early release but not his eligibility for home confinement.[6] (Reply at 1-3 (arguing that he should already be eligible for home confinement but that the BOP will not approve him for home confinement because of his immigration detainer).)

This argument is essentially an argument challenging the "manner, location, or conditions of [Mr. Samal's] sentence's execution." 28 U.S.C. § 2241. A "defendant may . . . challenge BOP's calculation [of his sentence]—in other words, the execution of the sentence—by filing a petition for a writ of habeas corpus under 28 U.S.C. § 2241." *Zavala v. Ives*, 785 F.3d 367, 370 n.3 (9th Cir. 2015). Thus, Mr. Samal's argument regarding earned time credits is better suited to a § 2241 petition.[7] *See, e.g., Ortiz*, 2023

---

[6] Mr. Samal's BOP records show that he is eligible for First Step Act earned time credits and, applying such credits to his sentence, that he will be eligible for home detention on May 1, 2023, and his projected release date is November 1, 2023. (*See* Resp., Ex. 1; *compare id.*, *with* Mot., Ex. 1 (indicating, as of October 11, 2022, that Mr. Samal could not have his earned time credits applied to his sentence because of his immigration detainer); *see also* Mot., Ex. 3 (stating that the BOP amended its earned time credits program statement so that it now allows inmates with immigration detainers, like Mr. Samal, to have First Step Act earned time credits applied to their sentences).)

[7] In fact, Mr. Samal states that he is currently litigating this issue in a 28 U.S.C. § 2255 petition with the warden FDC SeaTac. (Mot. at 2; Reply at 1-2.)

WL 1781565, at *5-6 & n.3 (noting that the defendant's argument regarding earned time credits was "likely better suited to a . . . § 2241 petition").[8] Even if the court were to consider Mr. Samal's challenge to BOP's calculation of his First Step Act earned time credits and determination of his eligibility for home confinement as a basis for compassionate release, the court concludes that such arguments do not constitute "extraordinary and compelling" reasons warranting compassionate release. *See, e.g.*, *Ortiz*, 2023 WL 1781565, at *6 (declining to conclude that earned time credits argument constituted "extraordinary and compelling" circumstances).

The court further finds that, even when Mr. Samal's arguments are considered together, he has not established "extraordinary and compelling" reasons justifying compassionate release.[9] Accordingly, the court DENIES Mr. Samal's motion for compassionate release.

### IV. CONCLUSION

For the foregoing reasons, the court DENIES Mr. Samal's second motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1) (Dkt. # 125).

---

[8] Additionally, to the extent Mr. Samal wants to the court to order the BOP to transfer him to home confinement (Reply at 3), the court cautions Mr. Samal that the relief available under 18 U.S.C. § 3582(c)(1)(A) is limited to a reduction in sentence and that congress has assigned the authority to decide the place of imprisonment to the BOP, not the district courts. *See* 18 U.S.C. § 3582(c)(1)(A) (authorizing court's to "reduce the term of imprisonment"); *id.* § 3621 (barring judicial review of the BOP's designation decision); *id.* § 3624 (giving the BOP discretion to allow an inmate to serve a portion of his sentence in home confinement or a community correctional facility).

[9] Having determined that Mr. Samal has not made the requisite showing of extraordinary and compelling reasons warranting compassionate release, the court need not analyze whether a reduction in Mr. Samal's sentence would be consistent with the factors set forth in 18 U.S.C. § 3553(a).

1   Dated this 16th day of March, 2023.

*[signature]*

JAMES L. ROBART
United States District Judge